STATE OF CONNECTICUT *v.* MARVEL HENRY
(AC 23067)

Foti, Flynn and West, Js.

Argued December 3, 2002—officially released May 6, 2003

*Norman A. Pattis,* for the appellant (defendant).

*Christopher T. Godialis,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *David J. Strollo,* senior assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. This appeal requires us to determine whether a complaining witness' recorded statement against the defendant may be admitted into evidence where the defendant is responsible for the fact that the witness is unavailable to testify. We also must determine whether evidence that the defendant allegedly murdered the complaining witness to ensure that she could not testify was admitted properly to prove consciousness of guilt. We conclude, under the facts of this case, that the recorded statement and the evidence of the defendant's consciousness of guilt were admitted into evidence properly. We also conclude that the trial court properly refused to charge the jury on sexual assault in the third degree and sexual assault in the fourth degree as lesser offenses included within sexual assault in the first degree.

In June, 2001, the jury convicted the defendant, Marvel Henry,[1] of kidnapping in the first degree with a firearm in violation of General Statutes § 53a-92a (a), attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (1), sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A), assault in the second degree in violation of General Statutes § 53a-60 (a) (2), attempt to commit assault in the second degree in violation of General Statutes § 53a-49 (a) (2) and 53a-60 (a) (2) as a lesser offense included within attempt to commit assault in the first degree, carrying a pistol without a permit in violation of General Statutes § 29-35 and failure to appear in the first degree in violation of General Statutes § 53a-172.[2] The court subsequently found that the defendant had committed a class A and a class B felony with a firearm in violation of General Statutes § 53-202k.[3]

The defendant, on appeal, claims that the court improperly (1) admitted (a) the victim's recorded statement to the police and (b) consciousness of guilt evidence that he murdered the victim, (2) undermined his constitutional right to a fair trial by charging the jury on consciousness of guilt, and (3) refused to charge the jury on sexual assault in the third degree and sexual assault in the fourth degree as lesser offenses included within sexual assault in the first degree. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim, Thomasa Fragher, deceased, gave the

---

[1] The defendant also is known as Paul and Dred.

[2] The jury acquitted the defendant of the charges of attempt to commit assault in the first degree and tampering with a witness.

[3] The defendant waived his right to have the jury decide whether he had violated General Statutes § 53-202k. See *State* v. *Montgomery*, 254 Conn. 694, 735, 759 A.2d 995 (2000) ("jury and not the trial court must make the factual determinations required under § 53-202k").

police a recorded statement recounting the events that took place on the evening of August 13, 1997. For a time about one year prior to that evening, the defendant and the victim had had a consensual sexual relationship. At approximately 7:30 p.m. on the date in question, the victim walked past 162 Gilbert Street in New Haven on her way to a store. The defendant was sitting on the porch of 162 Gilbert Street, where Kenneth Pascoe lived in the first floor apartment. When the victim returned, she again walked past 162 Gilbert Street. The victim and the defendant did not speak to one another until the victim reached the street corner. The defendant then called to her and hailed her to return to the porch. The victim returned to speak with the defendant, who requested that the two engage in sex. The victim refused the defendant's request to have sex with him that night.

The defendant became angry, left the porch and grabbed the victim by her hair. The victim protested and attempted to free herself. The defendant pulled the victim into Pascoe's house, telling her that she was going to have sex with him. When they were in the living room, the defendant, still holding the victim's hair, twisted her neck until she fell to the floor.[4] The defendant sat on her stomach. The victim struggled to free herself, but the defendant slapped her, punched her, kicked her head and jabbed her head with the point of a pen. The defendant groped the victim's breasts and told her to remove her shirt. When she refused, the defendant used the pen to make a hole in the shirt and stabbed the victim's chest.

When the defendant tried to choke the victim, she cried for help. The defendant then produced a gun and threatened to shoot the victim. The victim's friends

---

[4] The victim was wearing hair extensions that had been glued to her own hair. The defendant pulled on the hair extensions with such force that he pulled them out.

had heard her scream and asked Pascoe to investigate. Pascoe opened the door and told the defendant to get off the victim. As the victim was leaving, the defendant kicked her in the back.

While those events were transpiring, Pascoe, Anitra Clark and Larhonda Cash were present in the house. Their testimony corroborated portions of the victim's statement. Clark was in the kitchen eating with Pascoe and Cash when she heard a disturbance in the living room. She advised Pascoe to find out what was going on. When the victim left, Clark observed that the victim was crying, that her hair was in disarray and that she had vomited.

According to Pascoe, he, Clark and Cash heard a disturbance in the living room, and he went to investigate. He opened the door and saw the victim lying on the floor. The defendant was standing over her with what appeared to be a semiautomatic weapon with a six inch barrel. Pascoe told the defendant to leave, but the victim left first. The victim was crying, her hair was "rooted up" and she did not look well. The victim vomited on the sidewalk.

When Cash observed the victim, she saw that her T-shirt was torn and that she was attempting to zip her pants. Her hair was in disarray and her face was swollen. Cash left with the victim and was present when she vomited. When the victim was able to catch her breath, she told Cash that the defendant had demanded sex and that when she refused, he kicked her, stood on her stomach, and punched and smacked her. The victim also stated that the defendant had put a gun in her mouth.

Later that evening, the victim reported the assault to the New Haven police. The victim initially was reluctant to report the incident because she was afraid of the defendant. Her sister-in-law, Towanda Minnis, con-

vinced her to call the police. Officer Lynn Meekins responded to the complaint and observed that the victim's face was puffy beneath one eye. The victim told Meekins that the defendant had tried to have sexual contact with her and that he had brandished a weapon. The victim subsequently gave Detective Thomas Trocchio a recorded statement identifying the defendant as the perpetrator and selected his image from a photographic array.

Trocchio's investigation also corroborated portions of the victim's statement. The victim's appearance at the time she reported the incident, two hours after it had occurred, was consistent with the attack she described. She had abrasions and contusions on her face and neck, her hair was in disarray and some of it appeared to be missing. The shirt the victim was wearing had a hole in it, and there were ink marks adjacent to the hole. When he investigated, Trocchio found remnants of vomit on the sidewalk and the victim's hair extensions where she said that she had discarded them because the defendant had pulled them out.

Trocchio talked to Pascoe and took him to the police station to give a statement. Pascoe's friend, David Clarke, a person known to the defendant, was at 162 Gilbert Street when the police arrived. While Clarke was following Pascoe to the police station, the defendant paged him. Clarke called the defendant's cellular phone, and the defendant told him that the police were looking for him. When Clarke asked why, the defendant stated that he had put a gun to the victim's head and "made her suck [his] dick because she had 'burnt' [him]."[5]

The defendant was arrested on August 20, 1997, pursuant to a warrant, when he was found hiding in the

---

[5] "Burnt" is a vernacular term for giving a person a sexually transmitted disease.

bathroom of his wife's home. In an oral statement to the police,[6] the defendant admitted that he had been with the victim at Pascoe's apartment on August 13, 1997. Although he denied that he had forced the victim to enter the apartment, he admitted that he had hit her in the face and pulled her hair. He stated that he did so because the victim had given him a sexually transmitted disease.[7] The defendant was held in lieu of bond for several months.

The defendant made efforts to dissuade the victim from pressing the charges against him. He telephoned Pascoe from jail, where he was detained, and asked him to convince the victim to withdraw her complaint. In June, 1998, the victim told Cash that the defendant had offered to give her money to enable her to leave the state so that she would not be available to testify. The defendant never gave the victim money. According to Cash, the victim had been served with a subpoena to testify at the defendant's trial, and she did not want to be found in contempt of court.

In early July, 1998, the prosecutor spoke to the victim to determine whether she was willing to testify against the defendant. The victim indicated that she preferred not to testify, but if her failing to testify meant that the defendant would go free, she would testify against him.

---

[6] The defendant refused to give a written statement to the police.

[7] The defendant did not testify at trial. During closing argument to the jury, however, defense counsel stated: "And, by the way, I'm going to make it easy. We're not contesting that [the defendant] was there. You know, in a criminal case, it's hard for a lawyer to know what to do. You get so used to fighting, and the state is talking about [the defendant's] car . . . and I want to stand up and say, he was there, we're not contesting that he was present, we're not contesting that he saw [the victim], we're not contesting that they were lovers, *we're not contesting that that was a violent night with violent emotions.*

"What we're contesting is that there was a rape or an attempt to rape. What we're contesting is that there was kidnapping. What we're contesting is that there was a gun at all. What we're contesting is that there was an attack with a deadly weapon in the form of a pen." (Emphasis added.)

The charges against the defendant originally were to be tried in August, 1998. On July 25, 1998, however, the victim was found at about 10 p.m. in Keney Park in Hartford with gunshot wounds to her head. She died a short time later. The case was called for trial a second time on June 27, 2000, but the defendant failed to appear. One month later, he was found in Georgia and extradited to Connecticut.

Following a trial held in June, 2001, the jury convicted the defendant of six of the eight counts against him and one lesser included offense.[8] The court found that the defendant had committed a class A and a class B felony with a firearm, and gave him an effective sentence of forty years in prison, five years of which were mandatory.[9] The defendant appealed. Additional facts will be addressed where necessary.

I

In his statement of the issues presented, the defendant has articulated his first claim as an evidentiary one, i.e., "whether the court erred in permitting the jury to hear evidence relating to the alleged murder of the victim in a case in which murder had not been charged." The defendant, however, has briefed this issue in two parts. He argues first that "neither our case law, nor our evidence code, supports a theory of waiver," and, second, that "even if this court should adopt a waiver by misconduct rule, the trial court erred in permitting the murder case to be presented during a sexual assault case."

The defendant's claims might otherwise be stated generally as (1) Connecticut case law and its code of

---

[8] The state presented undisputed evidence that the defendant did not have a permit to carry a pistol on August 13, 1997.

[9] When the court sentenced the defendant, it merged the conviction of attempt to commit assault in the second degree with the conviction of assault in the second degree.

evidence do not support an evidentiary theory that a defendant waives the right to object to the admission of hearsay evidence by misconduct, and (2) notwithstanding the waiver by misconduct theory, evidence of how a defendant procured a witness' unavailability should not be admitted at a trial in which the defendant has not been charged with that crime. More specifically, with respect to the facts of this case, the defendant claims that the court improperly (1) admitted the victim's recorded hearsay statement to the police and (2) admitted evidence that the defendant murdered the victim, although he had not been charged with murder in this case. We disagree with the defendant's claims.

A

Facts

The following additional facts are necessary for our resolution of the defendant's claims. On January 23, 2001, the defendant, pro se, filed a motion for a speedy trial. At that time, the defendant had not yet been charged with the victim's murder. During pretrial proceedings held on April 3, 2001, the state presented its legal argument and made a proffer of evidence as to why the victim's recorded statement to the police should be admitted into evidence. The legal issue to be determined by the court was whether the defendant had waived his right to confrontation and his right to object to the hearsay recorded statement due to his misconduct, namely, having murdered the victim. The parties and the court agreed, in accordance with federal law, that an evidentiary hearing was necessary for the court to determine whether the facts supported a waiver by misconduct, but first the court had to determine whether it would recognize the waiver by misconduct theory.

The parties' arguments focused primarily on two cases from the United States Court of Appeals for the

Second Circuit: *United States* v. *Dhinsa*, 243 F.3d 635 (2d Cir.), cert. denied, 534 U.S. 897, 122 S. Ct. 219, 151 L. Ed. 2d 156 (2001), and *United States* v. *Mastrangelo*, 693 F.2d 269 (2d Cir. 1982), aff'd after remand, 722 F.2d 16 (1983), cert. denied, 467 U.S. 1204, 104 S. Ct. 2385, 81 L. Ed. 2d 343 (1984). Cases on the issue from other federal circuits also were considered. See *United States* v. *Thevis*, 665 F.2d 616 (5th Cir.), cert. denied sub nom. *Evans* v. *United States*, 456 U.S. 1008, 102 S. Ct. 2300, 73 L. Ed. 2d 1303 (1982); *United States* v. *Balano*, 618 F.2d 624 (10th Cir. 1979), cert. denied, 449 U.S. 840, 101 S. Ct. 118, 66 L. Ed. 2d 47 (1980).

In *Mastrangelo* and in subsequent cases, the Second Circuit reaffirmed "the principle that, where a defendant wrongfully procures the silence of a witness or potential witness, he will be deemed to have 'waived his sixth amendment rights, and *a fortiori*, his hearsay objection' to the admission of the declarant's statements." *United States* v. *Dhinsa*, supra, 243 F.3d 652, quoting *United States* v. *Mastrangelo*, supra, 693 F.2d 272. Furthermore, the Federal Rules of Evidence were amended to include rule 804 (b) (6), which is a codification of the *Mastrangelo* rationale. The defendant conceded the waiver by misconduct of his federal right to confrontation, but argued that the trial court was required to evaluate the victim's recorded statement under the applicable exception to the hearsay rule codified in the Connecticut Code of Evidence and under our state constitution.

At the conclusion of the legal arguments, the court ruled that it would hold an evidentiary hearing to determine whether the defendant had procured the victim's unavailability. The court disagreed with the defendant's argument that the confrontation clauses of the federal and state constitutions require separate analyses. See *State* v. *Malone*, 40 Conn. App. 470, 476–77, 671 A.2d 1321, cert. denied, 237 Conn. 904, 674 A.2d 1332 (1996).

With respect to the defendant's hearsay argument, the court concluded that it was not limited by the Connecticut Code of Evidence and, furthermore, that the state was not arguing that the victim's statement was admissible under the residual exception to the hearsay rule. The court stated that "if the state can prove by the appropriate standard that the defendant has procured the unavailability of this witness, the defendant is deemed to have waived his right of confrontation under the state and federal constitutions, and is deemed to have waived his objection to any hearsay statement coming [into evidence]."[10]

Jury selection commenced on April 10, 2001. During voir dire, it became apparent that the defendant could not question prospective jurors fully unless he knew whether the victim's recorded statement would be admitted into evidence and whether the court would permit the state to present the evidence of misconduct to the jury. The court, therefore, interrupted jury selection and held a hearing to determine whether the victim's recorded statement should be admitted into evidence and whether the state would be permitted to present evidence that the defendant had murdered the victim as evidence of consciousness of guilt.

Following an evidentiary hearing in which the state presented evidence that the defendant was responsible for the victim's murder, the court, in a memorandum of decision filed May 25, 2001, found by clear and con-

---

[10] The court concluded that the applicable standard of proof was that of preponderance of the evidence. See *United States* v. *Mastrangelo*, supra, 693 F.2d 273. In colloquy, the court noted *State* v. *Jarzbek*, 204 Conn. 683, 698, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988), which, in dicta, cited *Mastrangelo* with approval for the proposition that a defendant, by misconduct, can waive his right to confrontation. In *Jarzbek*, however, our Supreme Court, deciding a different confrontation clause issue, held that the standard of proof of clear and convincing evidence applied to the waiver of the right to confrontation. Id., 704–705.

vincing evidence[11] that the defendant had caused the death of the victim for the purpose of preventing her from testifying against him on the charges alleged in this case.[12] More specifically, the court found that the defendant had a strong motive to kill the victim. During June and July, 1998, the defendant was aware that the victim was prepared to testify against him, if need be. The defendant had rejected any plea bargain, and jury selection was scheduled to begin the first week in August, 1998. The defendant manifested his strong reluctance to spend time in jail in a number of ways, such as by offering to pay the victim money and by asking a mutual acquaintance to convince her to drop the charges.

The defendant also had the means to cause the victim's death. A number of witnesses knew that the defendant carried a .22 caliber pistol prior to July 25, 1998, but no one has seen the weapon since that date. A firearms expert found that the bullet fragments removed from the victim's head were fired from a .22 caliber weapon. A .22 caliber shell casing was found within feet of where the bleeding victim was found.

The defendant had an opportunity to commit the murder. The victim left her home in New Haven at about 2 p.m. on July 25, 1998, to meet a friend, Robin Andrews, at the intersection of Whalley and Sherman Avenues at 3:30 p.m. The victim never met Andrews. The records of the defendant's cellular phone show that the phone

[11] Although the court previously had concluded that the standard of proof with respect to waiver by misconduct was that of preponderance of the evidence; see *United States* v. *Mastrangelo*, supra, 693 F.2d 273; the court found, with respect to the facts of this case, that the state had proved by clear and convincing evidence that the defendant was responsible for the victim's unavailability. See *United States* v. *Thevis*, supra, 665 F.2d 631 (clear and convincing standard of proof).

[12] The defendant has not claimed that there was insufficient evidence to support the court's findings, and he does not claim that the court's findings were clearly erroneous.

was used in New Haven between 2:15 and 4 p.m. on that date. The records also demonstrate that the defendant's cellular phone was used in an area encompassing Keney Park in Hartford within one hour of the time that the medical examiner estimated that the victim had been shot, i.e., 10 p.m. The defendant told a Hartford police detective, Robert Dionne, that he never left New Haven on July 25, 1998. There was evidence, however, that the defendant was seen at a soccer tournament in Windsor on that day.

Clark testified that the defendant had called her at 10 p.m. on July 25, 1998. The cellular phone records demonstrate that the defendant's cellular phone placed a call to Clark at 10:27 p.m. that day. The evidence demonstrated that the defendant was in possession of the cellular phone on the date in question, and the evidence placed him in the area where the victim was found at or about the time that she was shot.

The defendant subsequently made statements to Clarke that further implicated the defendant in the victim's death. The defendant and Clarke had been charged in a criminal case in New York. The defendant asked Clarke where the New York complainant lived, suggesting that what had happened to the victim could happen to the complainant. The defendant smiled and laughed when Clarke asked him if he had killed the victim. The defendant told Clarke that the only reason he had not killed Pascoe was because Pascoe was Clarke's friend. The court concluded that this evidence was probative of the defendant's state of mind.

The court further found that the victim's recorded statement to Trocchio and her oral statement to Cash were sufficiently reliable so that their probative value outweighed any prejudice to the defendant. The court,

therefore, ruled that the victim's statement was admissible at trial.[13]

## B

### Standard of Review

Before we can address the defendant's claims, we must determine the applicable standard of review. In their briefs, neither the defendant nor the state has set forth the standard of review that is applicable to the defendant's claims, as required by Practice Book §§ 67-4 (d) and 67-5 (d). At trial, the state proffered the victim's recorded statement pursuant to federal law. See *United States* v. *Dhinsa*, supra, 243 F.3d 635; *United States* v. *Mastrangelo*, supra, 693 F.2d 269. The court reviewed the federal cases and concluded that if it found that the state met its evidentiary burden by proving by a preponderance of the evidence that the defendant had murdered the victim to prevent her from testifying against him at trial and that her recorded statement was more probative than prejudicial, then the defendant had waived his constitutional right to confrontation as well as his hearsay objection to the recorded statement. Following an evidentiary hearing, the court determined that the defendant had murdered the victim to procure her unavailability to testify at trial. The court ruled that it would admit the victim's recorded statement into evidence.

On appeal, the defendant claims that the court improperly admitted the victim's recorded statement pursuant to Connecticut case law and our code of evidence in violation of his right to object to the admission of hearsay evidence. Ordinarily, the standard of review applicable to claims of an evidentiary nature is the abuse of discretion standard. *State* v. *Pereira*, 72 Conn.

---

[13] The court also determined that there was probable cause to charge the defendant with murder for having caused the victim's death.

App. 107, 117, 806 A.2d 51 (2002), cert. denied, 262 Conn. 931, 815 A.2d 135 (2003). The defendant's evidentiary claim concerning waiver by misconduct, however, is rooted in his constitutional right to confront witnesses against him. "Evidentiary rulings are reviewed for abuse of discretion . . . and the district court's application of constitutional standards is reviewed de novo." (Citation omitted.) *United States* v. *Dhinsa*, supra, 243 F.3d 649; see also *State* v. *Taylor*, 153 Conn. 72, 75, 214 A.2d 362 (1965), cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966); *In re Shaquanna M.*, 61 Conn. App. 592, 600, 767 A.2d 155 (2001). The court's conclusion with respect to the admissibility of evidence under a waiver by misconduct theory, therefore, presents a question of law entitled to plenary review.

## C

### Hearsay Claim

The defendant claims that the court improperly admitted the victim's recorded statement by concluding that he had waived his right to object to the statement on hearsay grounds because he caused her death to prevent her from testifying against him on the charges in this case. We disagree.

"It is well established that a defendant has the right to confront witnesses against him as guaranteed by the confrontation clauses of both our federal and state constitutions. . . . [T]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." (Citations omitted; internal quotation marks omitted.) *State* v. *Rolon*,

257 Conn. 156, 175, 777 A.2d 604 (2001).[14] "The United States Supreme Court has recognized that competing interests may warrant dispensing with confrontation at trial. *Ohio* v. *Roberts*, 448 U.S. 56, 64, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980); *Chambers* v. *Mississippi*, [410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)]; *Mattox* v. *United States*, [156 U.S. 237, 243, 15 S. Ct. 337, 39 L. Ed. 409 (1895)." (Internal quotation marks omitted.) *State* v. *Jarzbek*, 204 Conn. 683, 693, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988).

"Cases involving the admission of an unavailable declarant's prior statements . . . [give] rise to Confrontation Clause issues because hearsay evidence was admitted as substantive evidence against the [defendant]. . . . *State* v. *Outlaw*, 216 Conn. 492, 503, 582 A.2d 751 (1990). The sixth amendment to the United States constitution guarantees that [in] all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . . While the confrontation clause may bar the admissibility of evidence possibly admissible under an exception to the hearsay rule; [id.], 504; the right of confrontation is not violated by the substantive use of a prior statement if the declarant is unavailable, and if that statement bears adequate indicia of reliability. Id., 505." (Internal quotation marks omitted.) *State* v. *Malone*, supra, 40 Conn. App. 476.

"We are mindful, however, that the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate

---

[14] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

The constitution of Connecticut, article first, § 8, provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him . . . ."

interests in the criminal trial process. . . . *State* v. *Alexander*, 254 Conn. 290, 298, 755 A.2d 868 (2000); *State* v. *Jarzbek*, supra, 204 Conn. 693." (Internal quotation marks omitted.) *State* v. *Wegman*, 70 Conn. App. 171, 179, 798 A.2d 454, cert. denied, 261 Conn. 918, 806 A.2d 1058 (2002). "A criminal defendant may waive his sixth amendment right of confrontation, which encompasses his right to be present at trial, by reason of his own misconduct. . . . Such a waiver implied by law must be distinguished from an express waiver of a constitutional right, which is ordinarily valid only if there is an intentional relinquishment or abandonment of a known right or privilege. . . . A defendant may waive his right of confrontation in a number of ways, such as by his voluntary and deliberate absence from trial . . . by disruptive conduct which requires his removal from the courtroom . . . or by causing a witness to be unavailable for trial for the purpose of preventing that witness from testifying." (Citations omitted; internal quotation marks omitted.) *State* v. *Jarzbek*, supra, 697–98; see also *United States* v. *Mastrangelo*, supra, 693 F.2d 272–73.

"Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong. Thus, if a witness' silence is procured by the defendant himself, whether by chicanery, *United States* v. *Mayes*, 512 F.2d 637, 648–51 (6th Cir.), cert. denied, 422 U.S. 1008, 95 S. Ct. 2629, 45 L. Ed. 2d 670 (1975), by threats, *United States* v. *Balano*, 618 F.2d 624, 628–29 (10th Cir. 1979), cert. denied, 449 U.S. 840, 101 S. Ct. 118, 66 L. Ed. 2d 47 (1980); *United States* v. *Carlson*, 547 F.2d 1346 (8th Cir. 1976), cert. denied [sub nom. *Hofstad* v. *United States*], 431 U.S. 914, 97 S. Ct. 2174, 53 L. Ed. 2d 224 (1977), or by actual violence or murder, *United States* v. *Thevis*, [supra, 665 F.2d 630–31], the defendant cannot then assert his confrontation clause rights in order to prevent prior grand jury testimony of that wit-

ness from being admitted against him. Any other result would mock the very system of justice the confrontation clause was designed to protect." *United States* v. *Mastrangelo*, supra, 693 F.2d 272–73. "Though justice may be blind it is not stupid." *State* v. *Altrui*, 188 Conn. 161, 173, 448 A.2d 837 (1982).

The United States Court of Appeals for the District of Columbia Circuit has stated: "It is hard to imagine a form of misconduct more extreme than the murder of a potential witness. Simple equity supports a forfeiture principle, as does a common sense attention to the need for fit incentives. The defendant who has removed an adverse witness is in a weak position to complain about losing the chance to cross-examine him. And where a defendant has silenced a witness through the use of threats, violence or murder, admission of the victim's prior statements at least partially offsets the perpetrator's rewards for his misconduct. We have no hesitation in finding, in league with all circuits to have considered the matter, that a defendant who wrongfully procures the absence of a witness or potential witness may not assert confrontation rights as to that witness." *United States* v. *Dhinsa*, supra, 243 F.3d 652, quoting *United States* v. *White*, 116 F.3d 903, 911 (D.C. Cir.) (per curiam), cert. denied, 522 U.S. 960, 118 S. Ct. 390, 139 L. Ed. 2d 305 (1997). The defendant, on appeal, does not contest the trial court's conclusion, in accord with federal case law, that a defendant who procures the unavailability of a witness against him has waived his federal and state constitutional rights to confrontation.

We turn next to the procedure by which the court determined whether the defendant had procured the unavailability of the victim. As previously stated, in 1997, the Federal Rules of Evidence were amended to incorporate the common law developed in the federal courts with regard to waiver by misconduct. Rule 804 now provides in relevant part: "(b) Hearsay exceptions.

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness . . . . (6) Forfeiture by wrongdoing. A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Fed. R. Evid. 804 (b) (6).

"By its plain terms, Rule 804 (b) (6) refers to the intent of a party to procure the unavailability of the *witness* . . . ." (Emphasis in original.) *United States* v. *Dhinsa,* supra, 243 F.3d 652. In *Dhinsa,* the Second Circuit held that "prior to finding that a defendant waived his confrontation rights with respect to an out-of court statement by an actual or potential witness admitted pursuant to Rule 804 (b) (6), the district court must hold an evidentiary hearing outside the presence of the jury in which the government has the burden of proving by a preponderance of the evidence that (1) the defendant (or party against whom the out-of-court statement is offered) was involved in, or responsible for, procuring the unavailability of the declarant 'through knowledge, complicity, planning or in any other way,' [*United States* v. *Miller,* 116 F.3d 641, 668 (2d Cir. 1997), cert. denied, 524 U.S. 905, 118 S. Ct. 2063, 141 L. Ed. 2d 140 (1998)]; and (2) the defendant (or party against whom the out-of-court statement is offered) acted with the intent of procuring the declarant's unavailability as an actual or potential witness. See Fed. R. Evid. 804 (b) (6) advisory committee note to subdivision (b) (6) (adopting the preponderance of the evidence standard required under Fed. R. Evid. 104 (a) 'in light of the behavior the new Rule 804 (b) (6) seeks to discourage'). . . ." (Citation omitted.) *United States* v. *Dhinsa,* supra, 653–54.

The court in this case ruled that it would conduct an evidentiary hearing outside the presence of the jury to determine whether, by a *preponderance* of the evidence, the defendant had procured the unavailability

of the victim. We agree with the court's legal determination, pursuant to federal law and *State* v. *Jarzbek*, supra, 204 Conn. 697–98, that a criminal defendant may by misconduct waive his right to confront witnesses against him. We also agree that the court should determine whether the defendant procured the unavailability of a witness pursuant to a hearing outside the presence of the jury.

At the conclusion of the hearing, the court found by *clear and convincing* evidence that the defendant had murdered the victim for the purpose of making her unavailable to testify against him in this trial. The defendant does not claim error in that regard. Although rule 804 (b) (6) of the Federal Rules of Evidence requires a preponderance of the evidence standard, the court was mindful of the law in this jurisdiction. In *Jarzbek*, our Supreme Court held, under the facts of that case and the public policy issue that they implicated,[15] that a clear and convincing evidence standard applies to evidentiary hearings conducted to determine whether a defendant has waived his constitutional right to confrontation. *State* v. *Jarzbek*, supra, 204 Conn. 705. We are cognizant of the vastly different public policy issues at play in *Jarzbek* and in the case before us, and that rule 804 (b) (6) is designed to protect the very heart of our judicial system. Because there is no reason for us to determine the question in this case, we leave the

[15] "We conclude that, in criminal prosecutions involving the alleged sexual abuse of children of tender years, the practice of videotaping the testimony of a minor victim outside the physical presence of the defendant is, in appropriate circumstances, constitutionally permissible. Our holding that appropriate circumstances may warrant a departure from strict compliance with confrontation requirements does not, however, signal a relaxation of the underlying evidentiary requirement that appropriate circumstances be proven to exist. . . . We instead mandate a case-by-case analysis, whereby a trial court must balance the individual defendant's right of confrontation against *the interest of the state in obtaining reliable testimony from the particular minor victim in question.*" (Emphasis added.) *State* v. *Jarzbek*, supra, 204 Conn. 704.

question of the standard of proof required in cases such as this to another day.[16]

Having concluded that the court properly determined that a defendant may waive his constitutional rights to confront witnesses against him by his misconduct in procuring the witness' unavailability, we now address the defendant's claim that Connecticut case law and our code of evidence do not lead to the conclusion that he also waived his right to object to the admission of the victim's recorded statement on hearsay grounds. We disagree with the defendant's position.

The defendant concedes that *Dhinsa* determined that a defendant who procures the unavailability of a witness at trial so that the witness cannot testify has waived his constitutional right to confrontation *and* his right to object to the witness' statement as hearsay. See *United States* v. *Dhinsa,* supra, 243 F.3d 653–54. He contends,

---

[16] The Second Circuit further held that "after the district court finds . . . that the hearsay statement is admissible under Fed. R. Evid. 804 (b) (6), it must still perform the balancing test required under Fed. R. Evid. 403 'in order to avoid the admission of facially unreliable hearsay.' " *United States* v. *Dhinsa,* supra, 243 F.3d 655. "The district court's findings after a hearing will not be disturbed unless they are clearly erroneous, and we are particularly hesitant to disturb the court's determinations when they are based on its evaluation of the credibility of witnesses." (Internal quotation marks omitted.) Id., 654.

That holding of the Second Circuit conforms with our law. "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of under delay, waste of time or needless presentation of cumulative evidence." Conn. Code Evid. § 4-3; see Fed. R. Evid. 403. "[T]he probative value of such evidence must outweigh [its] prejudicial effect . . . . Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . On review . . . therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *O'Neil,* 261 Conn. 49, 81, 801 A.2d 730 (2002).

The defendant does not claim that the victim's recorded statement was not relevant to the issues at trial or that its admission into evidence was more prejudicial than probative.

however, that in Connecticut, waiver of the right to confrontation does not automatically result in a waiver of the right to object to the witness' hearsay statement. We disagree.

The defendant correctly notes that our code of evidence contains no provision comparable to rule 804 (b) (6) of the Federal Rules of Evidence. He argues that the Connecticut Code of Evidence is an exclusive, all encompassing compilation of our evidentiary law, and, therefore, because it contains no provision that a hearsay statement that is offered against a party who has procured the unavailability of a witness may be entered into evidence, the court improperly admitted the victim's recorded statement into evidence. That is not the case.

The short answer to the defendant's argument that the victim's recorded statement should not have been admitted because no Connecticut case had yet addressed the issue is that this case is one of first impression. If we were to accept the defendant's logic, no novel claim or issue could ever be resolved by our courts. "The adaptability of the common law to the changing needs of passing time has been one of its most beneficent characteristics. . . . Accordingly, [i]nherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of stare decisis, which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose. If this were not so, we must succumb to a rule that a judge should let others long dead and unaware of the problems of the age in which he lives, do his thinking for him." (Citations omitted; internal quotation marks omitted.) *Craig* v. *Driscoll*, 262 Conn. 312, 338–39, 813 A.2d 1003 (2003).

Our conclusion is informed by Associate Justice David M. Borden's article introducing the Connecticut Code of Evidence to the bar of this state.[17] See D. Borden, "The New Code of Evidence: A (Very) Brief Introduction and Overview," 73 Conn. B.J. 210 (1999). We take the liberty of quoting Justice Borden at length.

At the time the committee charged with drafting a state code of evidence was appointed, "the thought was that a code of evidence would ultimately be presented to the legislature for enactment, and would be followed by a joint judicial and legislative oversight committee that would, from time to time, make recommendations for further changes." Id., 210. The leadership of the General Assembly, with whom the Rules Committee of the Superior Court later agreed, thought "that it would be easier to amend the Code from time to time, as the need arose, by rule rather than legislation . . . ." Id., 211.

"The Code is a restatement . . . of our current evidentiary case law." Id., 212. "It is, moreover, a 'code' in the sense of a set of the general statements of the rules embodied in the prior case law, without, however, being an attempt to restate every nuance, exception and different application of the rules of evidence expressed in that case law." Id. "The other side of this coin, however, is what the Code is not. It is not a code in the sense of the Internal Revenue Code. It does not purport to state every possible exception to or application of every evidentiary rule." Id., 213.

"One of the arguments against having a code of evidence at all is that it decreases the flexibility that is part of the common-law process. Under the common-

---

[17] Justice Borden served as the chairman of the committee of the Connecticut law revision commission charged with drafting a proposed code of evidence for Connecticut. See D. Borden, "The New Code of Evidence: A (Very) Brief Introduction and Overview," 73 Conn. B.J. 210 (1999).

law process, the courts are able, on a case-by-case basis, to develop—and to change—the rules of evidence as experience and reason indicate such development and change to be appropriate. That kind of flexibility is, to some degree, lost when the rules of evidence are codified. With codification, the courts are, in general, confined to interpreting and applying the Code, and changes require action by the codifying entity, in this case, the Judges of the Superior Court. Two provisions are aimed at the amelioration of this necessary loss of flexibility.

"First, the Code itself has a 'savings clause.' Section 1-2 (b) provides: 'Where the Code does not prescribe a rule governing the admissibility of evidence, the court shall be governed by the principles of the common-law as they may be interpreted in the light of reason and experience, except as otherwise required by the Constitution of the United States, the constitution of this state, the General Statutes or the Practice Book. The provisions of the Code shall not be construed as precluding any court from recognizing other evidentiary rules not inconsistent with such provisions.' This provision . . . will provide some degree of flexibility and common law creativity on the part of a court that is confronted with an evidentiary question that is not covered, either explicitly or implicitly, by the Code." (Citation omitted.) Id., 215.

The court's ruling with respect to waiver by misconduct regarding the defendant's right to object to the victim's recorded statement on the basis of hearsay falls squarely within § 1-2 (b) of the Connecticut Code of Evidence. The court therefore properly admitted the victim's recorded statement into evidence, as it was not inadmissible hearsay.

## D

### Evidence of Murder in a Case Where it is Not Charged

The defendant claims that the court improperly admitted evidence of his having murdered the victim to procure her unavailability at trial because he was not accused of murder in this case. The state argues that his claim is not reviewable because the defendant did not preserve it at trial.

The following facts are relevant to the defendant's claim. The hearing conducted by the court regarding the waiver by misconduct also served as a probable cause hearing regarding the victim's murder. The court found probable cause. The state charged the defendant with murder and sought to consolidate the charges alleged in this trial with the murder charge. The defendant objected, and the court agreed with him, reasoning that he had not had sufficient time to conduct discovery to defend against the murder charge.

The court, however, ruled that it would permit the state to present evidence that the defendant had murdered the victim as evidence of consciousness of guilt of the charges alleged here. The defendant objected, arguing that consciousness of guilt evidence is an antiquated legal theory and that the evidence was more prejudicial than probative. He made an oral motion in limine, arguing that the evidence of his having murdered the victim was circumstantial, that he had not been charged with murder in this case and that the murder evidence was a collateral issue being used to bolster a theory of consciousness of guilt. The court denied the defendant's motion in limine, reasoning that the consciousness of guilt conduct evidence that the state wanted to present was the defendant's procuring the unavailability of the victim by causing her death. The court also reasoned that because it found clear and convincing evidence that the defendant had caused the

victim's death, the probative value of the evidence outweighed it prejudicial effect.

The defendant then requested a mistrial. He argued that presenting evidence of the murder in this case would confuse the issues and that the murder evidence would captivate the jury moreso than the evidence of sexual assault. The defendant acknowledged that during jury selection, he had questioned the members of the venire panel about the murder evidence. In opposing the motion for a mistrial, the state noted that the defendant's prior counsel had evidence concerning the murder approximately one year before the trial here.[18] The state also noted that the reason for proceeding with the charges here was the defendant's pro se motion for a speedy trial. The court denied the defendant's motion for a mistrial.

On appeal, purely as a matter of routine, the defendant seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine; Practice Book § 60-5; of his constitutional claim that the murder evidence should not have been introduced in a trial where murder was not charged. Because we have concluded that the defendant preserved that claim at trial, *Golding* or plain error review is not needed. The defendant's due process claim, however, is not reviewable for two reasons. First, consciousness of guilt is an evidentiary matter, not a constitutional one. "It has . . . been stated numerous times that consciousness of guilt issues are not constitutional and, therefore, are not subject to review under the . . . *Golding* standard." (Internal quotation marks omitted.) *State* v. *Turner*, 67 Conn. App. 519, 527, 787 A.2d 625 (2002). "It is well established that [r]obing garden variety claims of [an evidentiary nature] in the

---

[18] The defendant previously was represented by a public defender, but had retained private counsel for trial.

majestic garb of constitutional claims does not make such claims constitutional in nature." (Internal quotation marks omitted.) *State* v. *Hansen,* 39 Conn. App. 384, 390, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995). Second, the defendant has not briefed the claim adequately.[19]

We will apply the abuse of discretion standard, which applies to evidentiary claims. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. . . . It is a fundamental rule of appellate procedure in the review of evidential rulings, whether resulting in the admission or exclusion of evidence, that an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." (Citations omitted; internal quotation marks omitted.) *State* v. *Anderson,* 74 Conn. App. 633, 644–45,

---

[19] "[F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . *Where the parties cite no law and provide no analysis of their claims,* we do not review such claims." (Emphasis added; internal quotation marks omitted.) *Wittman* v. *Krafick,* 67 Conn. App. 415, 416, 787 A.2d 559 (2001), cert. denied, 260 Conn. 916, 797 A.2d 516 (2002). "Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief *without* substantive discussion or *citation of authorities,* it is deemed to be abandoned." (Emphasis added.) *State* v. *Sewell,* 38 Conn. App. 20, 29, 658 A.2d 598, cert. denied, 234 Conn. 918, 661 A.2d 98 (1995).

813 A.2d 1039, cert. denied, 263 Conn. 901, 819 A.2d 837 (2003).

The case of *State* v. *Holliday*, 159 Conn. 169, 268 A.2d 368 (1970), is on point with the issue claimed by the defendant here. See also *State* v. *Mitchell*, 54 Conn. App. 361, 371–72, 738 A.2d 188, cert. denied, 251 Conn. 910, 739 A.2d 1250 (1999), cert. denied, 528 U.S. 1171, 120 S. Ct. 1197, 145 L. Ed. 2d 1101 (2000). In *Holliday*, the defendants were charged with assault with intent to commit murder. After hearing evidence of the crime, the court excused the jury to hold "a preliminary hearing on whether to admit the details of a subsequent assault"; *State* v. *Holliday*, supra, 171; on the victim. "On the ground that the evidence, if believed, disclosed conduct on the part of the defendants indicating a consciousness of guilt, the court ruled that evidence of this second assault was admissible despite the protests of the defendants." Id. The *Holliday* defendants claimed admission of the evidence of the second crime "outweighed its probative value in proving their guilt of the specific crimes charged, that it would inflame the jury, and that counsel was unprepared to defend his clients with respect to this second episode." Id.[20]

"As a general rule, evidence of guilt of other crimes is inadmissible to prove that a defendant is guilty of the crime charged against him. . . . The reason for the rule is that in the setting of a jury trial the danger of prejudice from evidence that the accused is a person of bad character and thus more likely to have committed the crime charged is deemed to outweigh the probative value of such evidence and may have no direct tendency

---

[20] "The correctness of this evidential ruling is the sole issue on this appeal, in which the defendants contend that the ruling was reversible error, in violation of the defendants' constitutional right to be informed of the nature and cause of the accusation and served to deprive them of their liberty without due process of law." (Internal quotation marks omitted.) *State* v. *Holliday*, supra, 159 Conn. 171.

to prove the crime charged. . . . However, [t]hat evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material. . . . Indeed, it has been said that there are so many exceptions to the rule that it is difficult to determine which is more extensive—the rule or its acknowledged exceptions. . . .

"One of the generally acknowledged exceptions is evidence of criminal acts constituting admissions by conduct which are intended to obstruct justice or avoid punishment for the crime presently charged. . . . As might be expected, wrongdoing by the party in connection with his case, amounting to an obstruction of justice may likewise be proven against him as an admission by conduct. By resorting to wrongful devices he gives ground for believing that he thinks his case is weak and not to be won by fair means. Accordingly, a party's . . . undue pressure, by bribery or intimidation or other means, to influence a witness to testify for him or to avoid testifying . . . all these are instances of this type of admissions by conduct. . . .

"Where, as in this instance, such evidence is offered, the trial court must also consider whether its prejudicial tendency outweighs its probative value. The process of such a determination is variously called a balancing test . . . or the exercise of judicial discretion." (Citations omitted; internal quotation marks omitted.) Id., 172–73. "In a criminal trial, it is relevant to show the conduct of an accused, as well as any statement made by him subsequent to the alleged criminal act, which may fairly be inferred to have been influenced by the criminal act." (Internal quotation marks omitted.) *State* v. *Reid*, 193 Conn. 646, 655, 480 A.2d 463 (1984).

"Uncharged misconduct evidence must satisfy a two part test in order to be admitted as an exception [to the rule that it is impermissible to prove guilt by a

subsequent crime]. The evidence must be relevant and material to at least one of the claimed exceptions, and its probative value must outweigh its prejudicial effect. . . . Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . . Therefore, every reasonable presumption should be given to uphold the trial court's decision." (Citations omitted; internal quotation marks omitted.) *State* v. *Middlebrook*, 51 Conn. App. 711, 716, 725 A.2d 351, cert. denied, 248 Conn. 910, 731 A.2d 310 (1999). "[A]ny improper evidence that may have a tendency to excite the passions, awaken the sympathy, or influence the judgment, of the jury, cannot be considered as harmless." (Internal quotation marks omitted.) *State* v. *Williams*, 190 Conn. 104, 109, 459 A.2d 510 (1983).

Here, as in *Holliday*, the court held a preliminary hearing on all of the evidence the state proposed to offer. After reviewing the record and the court's memorandum of decision with regard to the defendant's waiver by misconduct, we cannot conclude that the court abused its discretion. Although it is difficult to conceive of evidence of wrongdoing that is more prejudicial than an accusation of murder, the victim in this case was not present to testify. The evidence was relevant to explain to the jury the victim's absence and was circumstantial evidence of the defendant's guilt. After the evidence was admitted, the court instructed the jury on its purpose as consciousness of guilt evidence and gave the jury a more lengthy instruction during its charge in chief. See part II and footnote 21.

Furthermore, even if the court had abused its discretion, which it did not, the defendant has made no showing that the admission of the evidence was harmful to him. The jury heard eyewitness accounts of the cries for help and sounds of raucous activity that emanated

from Pascoe's living room when the defendant and victim were there. The defendant himself admitted to the police that he had hit the victim and pulled her hair. He also bragged to others that he had put a gun to the victim's head and made her perform a sexual act. Finally, during closing argument, defense counsel made a number of concessions. See footnote 7. At most, the evidence of consciousness of guilt was cumulative.

Finally, the evidence did not so inflame the passions of the jury as to cause the defendant prejudice. The jury acquitted him of two of the counts against him. See footnote 2. For those reasons, we conclude that the court did not improperly admit consciousness of guilt evidence that the defendant had murdered the victim.

II

The defendant's second claim is that the court violated his right to a fair trial by giving a consciousness of guilt instruction to the jury. The defendant does not take issue with the charge given to the jury, but with the fact that a consciousness of guilt instruction was given at all. We conclude that the defendant's claim is without merit.

The court instructed the jury in part as follows: "Now, I'm going to speak with you concerning the concept of consciousness of guilt, which, of course, was mentioned to you by counsel during their arguments. In any criminal trial, it is permissible for the state to offer evidence, which it claims to show that the conduct of the defendant after the time of the alleged offense may have been influenced by the criminal act, that is, the conduct shows a consciousness of guilt.

"In this case, you have heard testimony concerning the alleged conduct of [the defendant], which the state claims reflects a consciousness of guilt. The state claims

that the evidence shows that [the defendant] caused the death of [the victim] on July 25, 1998, so as to prevent her from testifying in this case. The state also charges that [the defendant] failed to appear for trial in this case on June 27 of the year 2000 and was subsequently arrested in Georgia on July 27 of the year 2000. Of course, before you can consider such conduct as consciousness of guilt, you must find that such conduct occurred. It is for you to decide as a question of fact what that conduct was, and what the defendant's purpose and reason was for acting as he did."[21]

"[Consciousness of guilt] is relevant to show the conduct of an accused, as well as any statement made by

---

[21] In the balance of the consciousness of guilt instruction, the court stated: "Flight, when unexplained, is one type of conduct which may show consciousness of guilt; however, flight, if shown, is not conclusive, nor does it raise a presumption of guilt, but is to be given the weight to which you think it is entitled under the circumstances.

"There may be other reasons for a defendant's flight that do not reflect feelings of guilt, and it is, therefore, up to you as judges of the facts to decide whether the conduct of the defendant reflects consciousness of guilt.

"As to the state's claim that [the defendant] caused the death of [the victim], of course, as murder charge is not before you at this time and thus you are not to render a verdict on such charge. I permitted the state to offer evidence regarding her death under a consciousness of guilt theory.

"Thus, if you conclude that [the defendant] did, in fact, murder [the victim], then you must consider whether that act reflects a guilty conscience relating to the crimes charged in this case. You may draw such an inference; however, that inference is not mandatory, that is, as a matter of law, it does not necessarily follow that murder flows from a guilty conscience. You should consider and weigh such conduct as you find to have taken place in connection with all of the other evidence in this case and give it such weight as in your judgment it is fairly entitled to receive.

"Now, also, ladies and gentlemen, in this case, the state was permitted to produce evidence from which you may or may not infer consciousness of guilt relating to statements [the defendant] made about the victim in this case. I am instructing you that those statements can be considered only for the limited purpose of determining whether they fairly reflect an inference of guilt as to the crimes charged in this case.

"The law does not permit what is called character or propensity evidence. Thus, I'm instructing you to disregard that portion of the state's final argument in which you were urged to consider [the defendant] as, quote, the

him subsequent to an alleged criminal act, which may be inferred to have been influenced by the criminal act. . . . The state of mind which is characterized as guilty consciousness or consciousness of guilt is strong evidence that the person is indeed guilty . . . and under proper safeguards . . . is admissible evidence against an accused." (Citations omitted; internal quotation marks omitted.) *State* v. *Burak*, 201 Conn. 517, 533, 518 A.2d 639 (1986). "Once the evidence is admitted, if it is sufficient for a jury to infer from it that the defendant had a consciousness of guilt, it is proper for the court to instruct the jury as to how it can use that evidence. It is then for the jury to consider any ambiguity . . . ." (Internal quotation marks omitted.) *State* v. *Middlebrook*, supra, 51 Conn. App. 720–21.

The sum and substance of the defendant's claim is that the consciousness of guilt instruction is Victorian in nature, and, thus, antiquated. In other words, the defendant is asking this court to overturn the law of this jurisdiction concerning consciousness of guilt. That we cannot do; as an intermediate court of appeal, we lack the authority to overturn the precedent of our Supreme Court. *State* v. *Brown*, 73 Conn. App. 751, 756, 809 A.2d 546 (2002). Our Supreme Court has considered the consciousness of guilt theory in the postmodern era, and reaffirmed its viability and validity. See *State* v. *Hines*, 243 Conn. 796, 812–16, 709 A.2d 522 (1998). Our Supreme Court iterated its decision early in the new millennium. *State* v. *Figueroa*, 257 Conn. 192, 197, 777 A.2d 587 (2001). The defendant failed to address *Hines* and *Figueroa* in his brief or otherwise to present new arguments for his claim. There is no legal basis, therefore, for this court to consider his claim. See *State* v. *Hines*, supra, 813.

kind of person, unquote, who seeks to harm those who pose an obstacle to him. That argument should not be considered by you in your deliberations."

Furthermore, the basis of the defendant's claim is the inference to be drawn from evidence of flight. He claims that there are reasons why a person may flee the site of a crime that have nothing to do with guilt. The shortcoming in the defendant's argument is that the court's consciousness of guilt instruction addressed not only his failure to appear, but also, and primarily, the inference to be drawn from the evidence that he murdered the victim. The defendant has failed to explain that obvious factual distinction from his flight argument. Consequently, we conclude that the court properly instructed the jury to consider the consciousness of guilt evidence.

## III

The defendant also claims that the court improperly refused to charge the jury on sexual assault in the third degree or sexual assault in the fourth degree as lesser offenses included within sexual assault in the first degree. We do not agree.

We note that "[t]here is no fundamental constitutional right to a jury instruction on every lesser included offense suggested by the evidence or by the information, indictment and bill of particulars." *State* v. *Whistnant*, 179 Conn. 576, 583, 427 A.2d 414 (1980). "A defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit

the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id., 588.

Our Supreme Court has concluded that "sexual assault in the fourth degree is not a lesser included offense of sexual assault in the second degree. A crime is not a lesser included crime unless it meets the four criteria set forth in *State* v. *Whistnant,* [supra, 179 Conn. 588]. At issue in the present case is the second requirement, which specifies that a crime is not a lesser included crime unless it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser . . . . Id. Simply put, for purposes of this case, the lesser offense must not require an element that is not necessary in order to commit the greater offense. *State* v. *Castro,* 196 Conn. 421, 428, 493 A.2d 223 (1985).

"[Our Supreme Court concluded] that sexual assault in the fourth degree is not a lesser included offense of sexual assault in the second degree, but is, rather, a separate offense. Sexual assault in the fourth degree requires proof of the element of sexual contact for the purpose of sexual gratification of the actor or degradation or humiliation of the victim, whereas sexual assault in the second degree has no such element. The latter crime requires proof of sexual intercourse whereas the former crime does not. Each crime, therefore, requires proof of an element that the other does not. *State* v. *Sirimanochanh,* [26 Conn. App. 625, 637, 602 A.2d 1029 (1992)]. Likewise, [our Supreme Court] recently held in *State* v. *Milardo,* 224 Conn. 397, 417, 618 A.2d 1347 (1993), that attempted sexual assault in the third degree in violation of General Statutes § 53a-72a is not a lesser included offense of attempted sexual assault in the first degree in violation of General Statutes § 53a-70 because the former requires proof of an additional element not found in the crime of attempted sexual assault in the

first degree, namely, proof that the defendant intended to compel sexual contact for the purpose of either the sexual gratification of the actor or the humiliation or degradation of the victim." (Internal quotation marks omitted.) *State* v. *Sirimanochanh*, 224 Conn. 656, 662-63, 620 A.2d 761 (1993).

The defendant again is asking this court to revisit issues decided by our Supreme Court. To prevail the defendant would have to establish that sexual assault in the third degree and sexual assault in the fourth degree are lesser offenses included in the crime of sexual assault in the first degree. The same element found in *Sirimanochanh* and *Milardo* to distinguish third and fourth degree sexual assault from second degree sexual assault—intent to compel sexual contact for the purpose of either the sexual gratification of the actor or the humiliation or degradation of the victim—distinguishes those crimes from first degree sexual assault. See General Statutes § 53a-65 (3). The defendant would have this court, in effect, reverse *Sirimanochanh* and *Milardo*. Once again, we must say that it is not the province of an intermediate appellate court to overturn the precedent of the jurisdiction's highest court. *State* v. *Brown*, supra, 73 Conn. App. 756. The trial court, therefore, properly refused the defendant's request to charge the jury that sexual assault in the third degree or sexual assault in the fourth degree are lesser offenses included within sexual assault in the first degree.

The judgment is affirmed.

In this opinion the other judges concurred.