******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# IN RE MIKHAIL M.*
## (AC 47684)

Moll, Clark and Lavine, Js.

*Syllabus*

The respondent father appealed from the judgment of the trial court for the petitioner, the Commissioner of Children and Families, terminating his parental rights as to his minor child. He claimed that the court improperly determined that he had failed to achieve a sufficient degree of personal rehabilitation as required by statute (§ 17a-112 (j) (3) (B) (i)). *Held*:

There was sufficient evidence in the record to support the trial court's conclusion that the respondent father had failed to achieve a sufficient degree of rehabilitation pursuant to § 17a-112 (j) (3) (B) (i) that would encourage a belief that, in a reasonable time, he could assume a responsible position in his child's life.

Argued November 12, 2024—officially released January 3, 2025**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of New Haven, Juvenile Matters, and tried to the court, *Knight, J.*; judgment terminating the respondents' parental rights, from which the respondent father appealed to this court. *Affirmed*.

*Matthew C. Eagan*, assigned counsel, for the appellant (respondent father).

*Seon A. Bagot*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

** January 3, 2025, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Nisa Khan*, assistant attorney general, for the appellee (petitioner).

*Opinion*

PER CURIAM. The respondent father,[1] Daniel R., appeals from the judgment of the trial court, rendered in favor of the petitioner, the Commissioner of Children and Families, terminating his parental rights with respect to his minor child, Mikhail M. On appeal, the respondent claims that the court improperly determined that he failed to achieve a sufficient degree of personal rehabilitation pursuant to General Statutes § 17a-112 (j) (3) (B) (i). We find no merit to the respondent's claim and, accordingly, affirm the judgment of the court.

"Failure of a parent to achieve sufficient personal rehabilitation is one of [the] statutory grounds on which a court may terminate parental rights pursuant to § 17a-112." (Internal quotation marks omitted.) *In re G. Q.*, 158 Conn. App. 24, 25, 118 A.3d 164, cert. denied, 317 Conn. 918, 118 A.3d 61 (2015). Concerning the failure to achieve personal rehabilitation, § 17a-112 (j) (3) (B) (i) provides for the termination of parental rights when the minor child has been found to have been neglected, abused or uncared for in a prior proceeding and the parent of such child "has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child."

"Personal rehabilitation as used in [§ 17a-112 (j) (3) (B) (i)] refers to the restoration of a parent to [his] former constructive and useful role as a parent. . . . [I]n assessing rehabilitation, the critical issue is not

---

[1] The parental rights of Brittney M., the biological mother of Mikhail, also were terminated. She has not appealed, and all references in this opinion to the respondent are to Daniel R. only.

whether the parent has improved [his] ability to manage [his] own life, but rather whether [he] has gained the ability to care for the particular needs of the child at issue. . . . An inquiry regarding personal rehabilitation requires us to obtain a historical perspective of the respondent's child-caring and parenting abilities. . . . Although the standard is not full rehabilitation, the parent must show more than any rehabilitation. . . . Successful completion of the petitioner's expressly articulated expectations is not sufficient to defeat the petitioner's claim that the parent has not achieved sufficient rehabilitation. . . . [E]ven if a parent has made successful strides in [his] ability to manage [his] life and may have achieved a level of stability within [his] limitations, such improvements, although commendable, are not dispositive on the issue of whether, within a reasonable period of time, [he] could assume a responsible position in the life of [his child]. . . .

"[T]he appropriate standard of review is one of evidentiary sufficiency, that is, whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court."[2] (Citations omitted; internal quotation marks

[2] The respondent also claims that the standard of review of evidentiary sufficiency established by our Supreme Court in *In re Shane M.*, 318 Conn. 569, 587–88, 122 A.3d 1247 (2015), is improper and therefore "should be replaced by the former clear error standard." He states that this claim was made only for purposes of preservation and acknowledges that this court does not have the authority to overturn the precedent of our Supreme Court. We agree that we are bound by our Supreme Court's decision in *In re Shane M.*, and, therefore, reject the respondent's standard of review claim. See e.g., *State* v. *Henry*, 76 Conn. App. 515, 551, 820 A.2d 1076 ("it is not the province of an intermediate appellate court to overturn the precedent of the jurisdiction's highest court"), cert. denied, 264 Conn. 908, 826 A.2d 178 (2003).

omitted.) *In re Fayth C.*, 220 Conn. App. 315, 319–20, 297 A.3d 601, cert. denied, 347 Conn. 907, 298 A.3d 275 (2023).

Concerning the issue of personal rehabilitation, the court found in its well reasoned decision that the respondent "has a long history of substance abuse. He started using and selling drugs in the eighth grade. He has strained relations with his family because of his past substance dependence, which includes the use of cocaine, fentanyl and methamphetamines. He refused the [Department of Children and Family's (department)] initial attempts to engage him in substance abuse treatment, declining to participate in any services after the child was placed in care, and he went missing from December, 2021, until March, 2022." The court questioned "whether the [respondent] will maintain his sobriety given the chronicity of the issue and his history of relapse even after substantial interventions" and noted that "Mikhail has issues that need to be attended to by a reliable and sober caregiver including medical concerns, allergies and a speech delay." The court further found that, "[d]espite engaging in an intensive intervention which included inpatient treatment, [the respondent] relapsed almost immediately after discharging from programming in December, 2022, and again in July, 2023, after participating in outpatient care. He is forty years old and has not demonstrated any meaningfully significant period of sobriety. Moreover, Dr. [Ines] Shroeder [a licensed psychologist, who conducted an independent, court-ordered psychological evaluation of the respondent], upon whose opinion this court relies, also expressed concerns regarding the [respondent's] ability to manage his abstinence. She stated that, during his evaluation, the [respondent] minimized his substance abuse dependence and had little insight into the impact his issues could have on Mikhail. Further, he has not demonstrated that he has adequately

addressed his mental health issues, which include depression and [post-traumatic stress disorder]. Moreover, the [respondent] has yet to address an outstanding arrest warrant pending out of California. This legal matter, though purportedly nonextraditable, is disquieting given the [respondent's] involvement in the criminal justice system, which includes his history of felony convictions, probationary stints, and fleeing the state of California without his probation officer's knowledge. During his time in Connecticut, he was arrested twice, once for a number of felonies and another time for getting into a domestic incident with his brother with whom he lives." The court additionally stated that the respondent's "parenting deficits are glaring," that his prior history of parenting includes the termination of his parental rights as to another child, which "event seemingly did not motivate the [respondent] to address his substance abuse issues when the mother became pregnant with Mikhail. He continued to misuse substances, left California while under court supervision, and disappeared for substantial periods during the child protection proceedings—failing to communicate and cooperate with the department." The court also found that the respondent lacked stable housing and that he "did not visit with [Mikhail] consistently during the first year of the child's life, seeing him only four times from December, 2021, to October, 2022. The [respondent] completed a parenting course and has been visiting with [Mikhail] more regularly since March of 2023." The court concluded that, under the totality of the circumstances, "the degree of rehabilitation achieved by the [respondent] falls short of that which would reasonably encourage a belief that in a reasonable time he can assume a responsible position in Mikhail's life."

We conclude that ample evidence exists in the record to support the court's determination in its well reasoned decision that the respondent failed to achieve sufficient

rehabilitation that would encourage the belief that, within a reasonable time, he could assume a responsible position in Mikhail's life. Accordingly, we disagree with the respondent's contention that the court's decision to terminate his parental rights as to Mikhail requires reversal.

The judgment is affirmed.