2007-NMSC-013

156 P.3d 694

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Anthony ROMERO, Defendant–Respondent.**

**No. 29,690.**

Supreme Court of New Mexico.

March 15, 2007.

Rehearing Denied April 11, 2007.

Gary K. King, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, NM, for Petitioner.

John Bigelow, Chief Public Defender, William A. O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

## OPINION

MINZNER, Justice.

{1} The State appeals from an opinion by the Court of Appeals remanding a judgment and sentence following Defendant's convictions of aggravated battery against a household member, contrary to NMSA 1978, § 30–3–16(C) (1995); aggravated assault against a household member with a deadly weapon, contrary to NMSA 1978, § 30–3–13(A)(1) (1995); false imprisonment, contrary to NMSA 1978, § 30–4–3 (1963); and bribery or intimidation of a witness, contrary to NMSA 1978, § 30–24–3(A)(3) (1997). *See State v. Romero,* 2006–NMCA–045, 139 N.M. 386, 133 P.3d 842, *cert. granted,* 2006–NMCERT–004, 139 N.M. 429, 134 P.3d 120. After the trial, the United States Supreme Court issued its opinion in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). While this case was pending on appeal to this Court and during briefing, the United States Supreme Court issued its opinion in *Davis v. Washington,* 547 U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). We address three general issues: (1) whether two of the victim's out-of-court statements were inadmissi-

ble, because they were testimonial under *Davis* and *Crawford;* (2) whether, even if inadmissible, their admission was harmless error; and (3) whether Defendant forfeited his right to object to the admission of those statements. *See State v. Alvarez–Lopez,* 2004–NMSC–030, 136 N.M. 309, 98 P.3d 699 (holding the doctrine of forfeiture by wrongdoing inapplicable when a witness had been deported during the period of time the defendant had been a fugitive). We affirm.

## I. Background

{2} The facts underlying this appeal are stated clearly and thoroughly in the Court of Appeals' Opinion. *Romero,* 2006–NMCA–045, ¶¶ 2–11, 139 N.M. 386, 133 P.3d 842. We do not restate them. We ought to emphasize, however, that Defendant was charged not only with domestic violence, which is the subject of this appeal, but also with the death of the victim, his wife. *See State v. Romero,* 2005–NMCA–060, 137 N.M. 456, 112 P.3d 1113, *cert. granted,* 2005–NMCERT–005, 137 N.M. 523, 113 P.3d 346, *cert. quashed,* 2006–NMCERT–003, 139 N.M. 353, 132 P.3d 1039 (*Romero I* ). The domestic violence charges arose out of an incident that occurred in mid-October 2001; Defendant was charged with murder after the victim was found dead in his bed in late December 2001. Defendant was convicted of second-degree murder, but the Court of Appeals reversed his conviction, on the basis that he was entitled to but had not received instructions on nondeadly force self-defense and on involuntary manslaughter. *Romero I,* ¶¶ 22–23.

{3} In this appeal the Court of Appeals may have reasoned that if the doctrine of forfeiture by wrongdoing applied, the issues of whether testimonial evidence had been admitted erroneously under *Davis* and *Crawford* and, if so, whether the error was harmless would be moot. *See Romero,* 2006–NMCA–045, ¶ 45, 139 N.M. 386, 133 P.3d 842. For whatever reason, the Court of Appeals first addressed the doctrine of forfeiture by wrongdoing. In addressing the doctrine of forfeiture by wrongdoing, the Court appropriately indicated its concern that *Alva-rez–Lopez* may have stated the doctrine too narrowly. *Id.* ¶ 37.

{4} We address the issues in the order Defendant briefed them. Defendant had the benefit of *Davis* by the time his answer brief was due, and *Davis* illuminates *Crawford.* Further, the preliminary questions ordinarily would seem to be whether Defendant has established an error at trial and, if so, whether that error is harmless. Therefore, we begin with a discussion of the evidentiary errors on which Defendant relied in arguing to this Court and the effect of *Davis* on the analysis of testimonial hearsay for purposes of the Confrontation Clause.

## II. Discussion

{5} *Davis* consolidated two appeals, each arising from a state conviction. Each appeal presented the issue of when a victim's out-of-court statements are subject to the Confrontation Clause of the Sixth Amendment. Each appeal stemmed from police investigation of a domestic dispute, and in each appeal, the declarant was unavailable at trial. *Id.* at ——, 126 S.Ct. at 2270–73. The first case, *Davis,* involved the admissibility of questions posed to the victim by a 911 operator during an emergency call about a domestic dispute, while the second case, *Hammon v. Indiana,* involved the admissibility of the victim's written statements in an affidavit given to a police officer after an alleged domestic dispute. *Id.* The Court held that the *Davis* 911 call was admissible but that admitting the *Hammon* affidavit would be a violation of the defendant's Sixth Amendment rights. *Id.* at ——, 126 S.Ct. at 2277–80.

{6} *Davis* further clarified the rule promulgated by *Crawford,* which held the Confrontation Clause bars the use of out-of-court statements made by witnesses that are testimonial, unless the witness is unavailable, and the defendant had a prior opportunity to cross-examine, regardless of whether such statements are deemed reliable. *Davis,* 547 U.S. at ——, 126 S.Ct. at 2273–74 (discussing the holding in *Crawford* concerning the phrase "testimonial statements"). In deciding *Crawford,* the Court deliberately chose

not to adopt a comprehensive definition of "testimonial," but stated:

> The text of the Confrontation Clause reflects this focus [on testimonial hearsay]. It applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' 2 N. Webster, An American Dictionary of the English Language (1828). 'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' *Ibid.* (alteration in original). An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.

*Crawford,* 541 U.S. at 51, 124 S.Ct. 1354.

{7} As part of an ongoing discussion of the Confrontation Clause and its application to the admission of out-of-court witness statements, *Davis* explored and defined the meaning of testimonial hearsay, holding:

> Statements are *nontestimonial* when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are *testimonial* when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at ——, 126 S.Ct. at 2273–74 (footnote omitted) (emphasis added). *Davis* confined its discussion of interrogation to situations involving law enforcement officers and their agents, concluding that actions of 911 operators, while not law enforcement officers themselves, qualified as actions of the police. *Id.* at ——, 126 S.Ct. at 2274. The Court did not address further the scope of police interrogation, stating that "our holding today makes it unnecessary to consider whether and when statements made to someone other than law enforcement personnel are 'testimonial.'" *Id.* n. 2.

{8} The Court distinguished *Crawford,* which considered an interrogation by police officers of a witness hours after the event she described, from *Davis,* which considered an interrogation by a 911 operator during an ongoing emergency, based on the immediacy of the event. "[T]he nature of what was asked and answered in *Davis,* again viewed objectively, was such that the elicited statements were necessary to be able to *resolve* the present emergency, rather than simply to learn (as in *Crawford* ) what had happened in the past." *Davis,* 547 U.S. at ——, 126 S.Ct. at 2276. "[T]he difference in the level of formality between the two interviews is striking." *Id.* at ——, 126 S.Ct. at 2276–77.

{9} On appeal to this Court, Defendant argues that when the Sexual Assault Nurse Examiner (SANE nurse) examined the victim, she was acting as a proxy for law enforcement officers and conducting a police interrogation. Defendant notes the victim's visit was a result of her grand jury testimony and the help of a law enforcement officer working on the criminal case against Defendant. He argues the trial court erred in permitting the nurse to recite the victim's statement as if the nurse had been the victim.

{10} At trial, Officer Lewandowski testified about the victim's appearance and demeanor and his initial interaction with her at the scene on October 13, 2001. *Romero,* 2006–NMCA–045, ¶ 5, 139 N.M. 386, 133 P.3d 842. The State played for the jury a taped interview of the victim, conducted the same afternoon as the incident. *Id.* ¶ 6. While the admissibility of the victim's statements to the officer at the scene are not an issue on appeal to this Court, Defendant argues the taped interview was admitted as testimony in violation of his Sixth Amendment right to confrontation. He does not contend the officer's testimony about the victim's appearance and demeanor and his interaction with her on October 13 should have been excluded.

{11} We address each evidentiary issue separately. Then we address the question of whether any error in admitting evidence was harmless. Finally, we address the question of whether the doctrine of forfeiture by wrongdoing is applicable.

## A. The SANE Nurse's Testimony

{12} Defendant argues the statement given by the victim during the SANE

interview was testimonial in three respects. First, the statement was the product of an investigation by authorities. Second, the victim subjectively knew her statement was testimonial in nature. *See Davis*, 547 U.S. at ——, 126 S.Ct. at 2274 n. 1 ("[E]ven when interrogation exists, it is in the final analysis the declarant's statements, not the interrogator's questions, that the Confrontation Clause requires us to evaluate."). He also reasons a reasonable person would have objectively understood it to be testimonial. "[What is testimonial is] in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Crawford*, 541 U.S. at 51, 124 S.Ct. 1354 (internal citation omitted). Finally, as Defendant reasons in his answer brief, the statement was testimonial on its face because it was "clearly intended as a criminal accusation directed at Anthony Romero" and is a testimonial narrative supporting that accusation.

■ {13} The State argues, on the other hand, that the victim's statement to the SANE nurse was for the purposes of medical treatment and not sufficiently formal to qualify as "testimonial" or, in the alternative, that the "testimonial" portions should be redacted to accommodate *Davis*.

> [T]rial courts will recognize the point at which, for Sixth Amendment purposes, statements in response to interrogations become testimonial. Through *in limine* procedure, they should redact or exclude the portions of any statement that have become testimonial, as they do, for example, with unduly prejudicial portions of otherwise admissible evidence.

*Id.* at ——, 126 S.Ct. at 2277.

{14} We need not decide whether an examination by a SANE nurse is analogous to a 911 call, within the meaning of the Confrontation Clause, because a SANE nurse examination is not typically "designed primarily to establish or prove some past fact, but to describe current circumstances requiring police assistance." *Id.* at ——, 126 S.Ct. at 2276 (internal quotation marks omitted). On the facts in this record, Defendant's arguments that the evidence was "testimonial" within the meaning of *Davis* have merit.

{15} The victim's narrative, read verbatim by the SANE nurse, includes two portions, that while relevant to medical treatment, accuse Defendant of specific criminal acts. For example, the narrative includes the following:

> "That's when he sexually assaulted me on the floor. He took off my pants and underwear and penetrated me." I asked Jessica, and this is me asking Jessica, "I asked Jessica what she meant by penetrated me. Jessica replied, and this is her words, 'penis in my vagina.'" End quote. Then Jessica continued, and this is in quotes, "I kept telling him no and to stop. I don't remember after that." End quote. I asked Jessica if Anthony was wearing a condom and she replied no.

Other portions of the statement also could be viewed as relevant to seeking medical treatment, but also accuse Defendant of specific criminal acts:

> "Then he started to choke me. He put his hands around my neck and was on top of me. I was on the bed. I don't remember what happened after that. I might have passed out.... He kissed me and told me to tell the police the marks on my neck were from rough sex."

{16} In *Davis*, the jury did not hear the entire 911 call. The Court suggested that the questions posed to the victim by the 911 operator might have evolved into an interrogation and those answers should have been redacted or excluded, but that any error was harmless. *Id.* at ——, 126 S.Ct. at 2277–78. The victim in *Davis*, however, was responding to individual, specific questions posed by the 911 operator. *Id.* Here, the victim was asked to tell the SANE nurse what happened, so the SANE nurse would know how to proceed. Her narrative identifies Defendant and accuses him of specific criminal acts. A different sort of redaction is necessary.

{17} *Davis* emphasized that the victim's answers arose out of an ongoing emergency, while the *Hammon* statements arose out of an after-the-fact inquiry. *Id.* at ——, 126

S.Ct. at 2276–79. In this appeal, the examination occurred several weeks after the assault and with the assistance and encouragement of Officer Lewandowski, who made the appointment. Under these circumstances, the portions of the victim's narrative specifically accusing Defendant of sexual assault and other charges should have been excluded. The facts in this record are more analogous to the facts of *Hammon* than *Davis*.

{18} We agree with the State that redaction of portions of the narrative might have been appropriate, but the State has not identified portions of the narrative that might have been likely candidates for redaction. Under these circumstances, we affirm the Court of Appeals' determination that the portion of the SANE nurse testimony that recited the victim's narrative should have been excluded. No basis for redaction of that narrative has been identified.

### B. Officer Lewandowski's Testimony

■ {19} The officer testified at trial that when he encountered the victim at the scene on October 13, "she was upset, she was crying, she was shaking, she was continually crying." This exact language does not appear in the officer's police report. Instead, the report states, "I observed Ms. Romero with no shoes on her feet and crying for help. I observed redness and numerous cut marks on her neck. I observed Ms. Romero's voice changing and she was struggling to talk and continually clearing her throat." When Defendant attempted to impeach the officer on this issue, the officer testified the taped interview was part of his report, and the victim's emotional state was evident during that interview. The Court of Appeals held the victim's statements to the officer at the scene were not "testimonial" under *Crawford*. *Romero*, 2006–NMCA–045, ¶ 68, 139 N.M. 386, 133 P.3d 842.

{20} The State does not challenge that holding. The State does challenge the Court of Appeals' failure to permit the officer to testify about his observations of the victim during the taped interview. In a sense, this challenge is similar to the challenge the State has raised with respect to the SANE nurse testimony.

{21} *Crawford* held that testimonial out-of-court statements are barred under the Confrontation Clause of the Sixth Amendment, unless the witness is unavailable, and the defendant had a prior opportunity to cross-examine the witness. 541 U.S. at 68, 124 S.Ct. 1354. Although *Crawford* declined to create a definitive list of statements that will always qualify as testimonial, the Court did say, "[s]tatements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." *Id.* at 52, 124 S.Ct. 1354. *Davis* further developed the concept of testimonial, and said that when an interrogation, as part of an investigation, about potentially criminal *past* conduct is conducted, a declarant's statements are "testimonial." *Davis*, 547 U.S. at ——, 126 S.Ct. at 2278. *Davis* further explained that the level of formality of the interrogation is a key factor in determining whether statements are "testimonial" within the meaning of *Crawford*. *Id.* Under *Crawford* and *Davis*, the victim's taped, station-house interview was clearly "testimonial" for the purposes of the Sixth Amendment.

■ {22} The State acknowledges that the admission of the taped interview in its entirety was an error under *Crawford*. However, the State argues that the officer's testimony about his subjective observations of the victim's emotional state during the taped interview was not testimonial. Neither *Crawford* nor *Davis* address this argument. Nor did the Court of Appeals. The State contends that because the officer was available for cross-examination and because his testimony was based on firsthand observation, it was not hearsay and did not present a *Crawford* issue. We agree.

{23} Based on the Court of Appeals' analysis and the holdings of *Crawford* and *Davis*, the taped interview of the victim was "testimonial" and should not have been played for the jury and admitted at trial. *See Romero*, 2006–NMCA–045, ¶ 52, 139 N.M. 386, 133 P.3d 842. The officer's testimony regarding his observations of the victim during the taped interview was admissible under *Crawford* and *Davis*.

## C. Harmless Error

{24} The discussion of harmless error is made more difficult by the fact that this case was tried before *Crawford* or *Davis* were decided. As a result, it seems very likely that objections were not made at trial that would have been made had either *Crawford* or *Davis* been available. Further, the case was briefed, in part, without the benefit of *Davis*. As a result, the written arguments on appeal probably differ from those the parties would have made with the benefit of *Davis*. In particular, we must decide what evidence we are entitled to consider in evaluating harmless error. In fairness to Defendant and in an effort to be consistent with comparable cases, we believe Defendant ought to be able to challenge not only the SANE nurse's testimony but also the taped interview with Officer Lewandowski. We recognize that Defendant cross-examined the nurse on the information we have concluded should have been redacted. We also recognize that he did not object to the use of the victim's grand jury testimony, which essentially duplicated the taped interview, because he wished to rely on the grand jury testimony for purposes of impeachment. Nevertheless, we are persuaded that Defendant ought to be able to rely on *Crawford* and *Davis* on appeal to this Court, notwithstanding trial choices made prior to the time those opinions were available and after his initial objections at trial were overruled. *State v. Lopez*, 2005–NMSC–036, ¶ 29, 138 N.M. 521, 123 P.3d 754 ("We apply new rulings in criminal cases to all cases on direct review."); *see Romero*, 2006–NMCA–045, ¶¶ 13–16, 139 N.M. 386, 133 P.3d 842 (discussing State's arguments that Defendant waived or failed to preserve his Confrontation Clause arguments).

{25} The Court of Appeals decided, under *State v. Johnson*, 2004–NMSC–029, 136 N.M. 348, 98 P.3d 998, that the inadmissible evidence corroborated and strengthened the State's case and thus could not be viewed as harmless error. *Romero*, 2006–NMCA–045, ¶ 70, 139 N.M. 386, 133 P.3d 842. We have agreed with the Court of Appeals as to the exclusion of victim's narrative from the SANE nurse's testimony and also as to the taped interview of the victim by Officer Lewandowski. Because we have not been asked to review the Court of Appeals' analysis of the victim's grand jury testimony as inadmissible, nor its analysis of the victim's statement to Officer Lewandowski at the scene as admissible, we do not address the merits of the Court of Appeals' analysis.

{26} We are left with the Court of Appeals' conclusion that the jury properly heard evidence of the victim's statement at the scene, evidence of her appearance and demeanor at that time, and the testimony of other witnesses to past incidents of violence between Defendant and the victim. *Id.* ¶¶ 72–75. The jury should not have heard the victim's grand jury testimony, the taped interview with Officer Lewandowski, or her narrative as testified to by the SANE nurse. The State had the burden to show there was no " 'reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Johnson*, 2004–NMSC–029, ¶ 9, 136 N.M. 348, 98 P.3d 998 (quoting *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). The State did not carry its burden.

{27} In the record of this appeal, there is sufficient evidence to support the conviction without the inadmissible evidence. Nevertheless, the victim's grand jury testimony, her taped interview with Officer Lewandowski, and the narrative to which the SANE nurse testified provided a consistent coherent narrative that supplemented and thus corroborated or strengthened the State's theory of what had happened. Had there been a single charge of battery or assault against a household member, our conclusion might be different, but we cannot say the inadmissible evidence did not contribute to the multiple charges of which Defendant was convicted. Thus, we conclude the Court of Appeals correctly held under *Crawford* and *Davis* that evidence was admitted erroneously, and the error was not harmless. We next address the question of whether Defendant should be precluded from raising the error pursuant to the doctrine of forfeiture by wrongdoing.

## D. Forfeiture by Wrongdoing

{28} The Court of Appeals noted that in *Alvarez–Lopez* we indicated that a defendant does not forfeit or waive his or her right to confront a witness against him unless he or she procured the witness's absence with the intent to prevent that witness from appearing at trial. *Romero*, 2006–NMCA–045, ¶¶ 22–25, 139 N.M. 386, 133 P.3d 842 (discussing this Court's opinion in *Alvarez–Lopez*, 2004–NMSC–030, ¶ 5, 7–10, 12–14, 136 N.M. 309, 98 P.3d 699). The Court of Appeals observed that we had relied on a federal rule of evidence that some courts have considered distinct from the requirements of the federal constitution. The Court of Appeals suggested that other jurisdictions have recognized a distinction between the requirements of a valid waiver of a right, which ordinarily is associated with intent, and forfeiture, which might require misconduct at a certain level. *Id.*, 2006–NMCA–045, ¶¶ 30–34, 139 N.M. 386, 133 P.3d 842. The Court of Appeals also noted that a rule of evidence might provide greater protection, as a matter of policy, than the constitutional right of confrontation mandates. *Id.* ¶ 36. These observations reflect case law we did not consider in deciding *Alvarez–Lopez.*

{29} Neither *Davis* nor *Crawford* addressed this issue, although *Crawford* referred to the doctrine as an equitable limitation on the right of confrontation. *Crawford*, 541 U.S. at 62, 124 S.Ct. 1354. In *Davis*, furthermore, the United States Supreme Court said that

> when defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce. While defendants have no duty to assist the State in proving their guilt, they *do* have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system. We reiterate what we said in *Crawford:* that "the rule of forfeiture by wrongdoing ... extinguishes confrontation claims on essentially equitable grounds." 541 U.S., at 62, 124 S.Ct. 1354, [158 L.Ed.2d 177] (citing *Reynolds [v. U.S.]*, 98 U.S. at 158–59, [25 L.Ed. 244 (1878)]). That is, one who obtains the

absence of a witness by wrongdoing forfeits the constitutional right to confrontation.

*Davis*, 547 U.S. at ——, 126 S.Ct. at 2280. This language in *Davis* seems consistent with an intent requirement, whether waiver or forfeiture provides the better analogy.

{30} There is case law to the effect that when a defendant has murdered a witness whose out-of-court statements the prosecution wishes to introduce at the defendant's trial for the murder, that defendant will not be allowed to claim the constitutional right of confrontation, even if the prosecution cannot prove he or she killed to prevent the witness from testifying. *See United States v. Garcia–Meza*, 403 F.3d 364 (6th Cir.2005); *State v. Meeks*, 277 Kan. 609, 88 P.3d 789 (2004). In this context, evidence that murder was committed to prevent the victim from testifying might be less strong than in more typical witness-tampering cases. It has been argued, as the State does in this appeal, that the doctrine of forfeiture by wrongdoing should be expanded beyond witness-tampering cases so that forfeiture applies "whenever a defendant's wrongdoing caused a witness's unavailability." Joshua Deahl, Note, *Expanding Forfeiture Without Sacrificing Confrontation After Crawford*, 104 Mich. L.Rev. 599, 602 (2005). This argument views the rationale underlying the rule as estopping a defendant from complaining that he or she is unable to cross-examine a witness, when the defendant caused the inability. "It seems clear that causing one's own inability to cross-examine is what lies at the heart of the forfeiture rule." *Id.* at 616, 88 P.3d 789. Yet even this argument is tempered by the view that "forfeiture should apply infrequently and only when there is strong evidence of its occurrence" and that we need "limitations that are designed to consistently achieve that end." *Id.* at 615, 88 P.3d 789.

{31} The more traditional rationale reflects the view that such a defendant otherwise would be permitted to "benefit" from his or her wrongdoing. " '[W]hen confrontation becomes impossible due to the actions of the very person who would assert the right, logic dictates that the right has been waived. The law simply cannot countenance a defendant

deriving benefits from murdering the chief witness against him.'" *Meeks*, 88 P.3d at 794 (quoting *State v. Gettings*, 244 Kan. 236, 769 P.2d 25, 28 (1989)). These opinions must be premised on the view that the federal rules of evidence do not limit, even if they help define, the forfeiture by wrongdoing rule, nor do they determine the "constitutional right to confrontation." *Alvarez–Lopez*, 2004–NMSC–030, ¶ 9, 136 N.M. 309, 98 P.3d 699. *See generally Garcia–Meza*, 403 F.3d at 370–71 (distinguishing the right secured by the Sixth Amendment and the protection of the rules of evidence). To the extent these opinions do not deal with typical witness-tampering cases, however, it may be that the intent requirement is unworkable. That would not be a reason to abandon it in cases where it helps provide a strong basis for finding waiver or forfeiture.

{32} Defendant has argued on appeal that the right of confrontation is not the sort of benefit to which the traditional rationale ought to be applied. Rather, confrontation is a vehicle for ensuring that the jury is exposed not only to the strength of the evidence against a defendant in a criminal trial but also to the weaknesses in that evidence. Defendant makes a compelling argument that we are being asked to balance a constitutional right against a somewhat vague and amorphous sense of what ought to be permitted. For example, the doctrine might be said to encompass premeditated murder within the scope of intentional wrongdoing but not vehicular homicide.

{33} Further, the same rationale seems to underlie the federal rule of evidence on which we relied in *Alvarez–Lopez*, making clear that the same rationale can support a narrow or a broad test or something between narrow and broad. We do not see any clear or easy distinction among degrees of homicide if the emphasis is on wrongdoing and believe that if the federal rules of evidence do not limit the doctrine, then a determination must be made on a case-by-case basis, with the risk of inconsistent results from different district courts and different appellate panels. Moreover, that determination ought to reflect the elements, even if constructive, of waiver or help identify conduct that merits the sort of

condemnation associated with the concept of forfeiture.

{34} The stated rationale serves an important public policy of deterring intentional wrongdoing that threatens the strength of the process in which the constitutional right operates. Nevertheless, we believe the emphasis must be not only on wrongdoing but on intentional wrongdoing, from which an inference of waiver might be appropriate or in which an equitable conclusion of forfeiture is justified. Anything else appears to diminish the constitutional right *Crawford* and *Davis* have been developing with such care.

{35} We have reviewed many opinions from other jurisdictions that have addressed the doctrine of forfeiture by wrongdoing. We conclude that our opinion in *Alvarez–Lopez*, requiring proof of wrongdoing intended to prevent a witness from testifying before a defendant will be viewed as having forfeited the right of confrontation, is the majority rule. *See, e.g., United States v. Gray*, 405 F.3d 227 (4th Cir.2005); *State v. Valencia*, 186 Ariz. 493, 924 P.2d 497 (Ariz. Ct.App.1996); *State v. Henry*, 76 Conn.App. 515, 820 A.2d 1076 (2003); *Devonshire v. United States*, 691 A.2d 165 (D.C.1997); *State v. Hallum*, 606 N.W.2d 351 (Iowa 2000); *Commonwealth v. Edwards*, 444 Mass. 526, 830 N.E.2d 158 (2005); *State v. Wright*, 701 N.W.2d 802 (Minn.2005), *vacated and remanded* in light of *Davis*, —— U.S. ——, 126 S.Ct. at 2279 (2006); *People v. Geraci*, 85 N.Y.2d 359, 625 N.Y.S.2d 469, 649 N.E.2d 817 (1995); *Commonwealth v. Laich*, 566 Pa. 19, 777 A.2d 1057 (2001); *State v. Ivy*, 188 S.W.3d 132 (Tenn.2006); *Gonzalez v. State*, 195 S.W.3d 114 (Tex.Crim.App.2006); *State v. Mechling*, 219 W.Va. 366, 633 S.E.2d 311 (2006). *See also People v. Melchor*, 362 Ill.App.3d 335, 299 Ill.Dec. 8, 841 N.E.2d 420, 433 (2005) (noting that except in situations in which the defendant is on trial for the murder of a witness whose testimony the prosecution wants to admit, a defendant's intent or motive is relevant in determining whether the doctrine of forfeiture by wrongdoing applies). Further, we cannot say the distinction between waiver and forfeiture has proved helpful, although we agree that forfeiture is the preferred term. *See Hallum*, 606

N.W.2d at 354–55 (discussing the difference between the two terms).

{36} We note that in describing the doctrine of forfeiture by wrongdoing, *Davis* cited to *Edwards*, 830 N.E.2d at 172, an opinion of the Supreme Judicial Court of Massachusetts, which required the prosecution to prove the defendant acted in order to procure the unavailability of a witness. *See Davis*, 547 U.S. at ——, 126 S.Ct. at 2280 (indicating that both federal and state courts follow the practice of holding the prosecution to the standard of preponderance of the evidence). We also note that the court described Federal Rule of Evidence 804(b)(6) as codifying the forfeiture doctrine. *Id.*

■ {37} For these reasons, we are not persuaded *Alvarez–Lopez* should be overruled or modified. To the extent the Court of Appeals' opinion asked us to revisit the issue, we have. Having revisited the issue, we reaffirm our holding in *Alvarez–Lopez* that the prosecution is required to prove intent to procure the witness's unavailability in order to bar a defendant's right to confront that witness. While there are arguments for change and opinions to the contrary, none of the arguments for change or opinions to the contrary provide satisfactory limitations on a doctrine that has the potential to emasculate the Confrontation Clause.

{38} We should make one other point. The Court of Appeals remanded, consistent with *Alvarez–Lopez*, for a factual determination by the trial court of Defendant's intent. We doubt that there is sufficient evidence, even by a preponderance of the evidence standard, to support a finding of intent, but we will not overrule the Court of Appeals on this point. Neither party has suggested the Court of Appeals' opinion erred in remanding for a pre-trial factual determination of intent, and it is possible there is evidence in the record to which we have not been directed that would support such a finding.

### III. Conclusion

{39} In a sense, then, we are reversing Defendant's convictions conditionally. The condition is that if, on remand, he is found to have procured the victim's death with the intent to make her unavailable as a witness, he is not entitled to the benefit of the confrontation clause, and his convictions on the charges at issue in this appeal will stand. If, however, the trial court determines that there is insufficient evidence of his intent, he is entitled to a new trial on the charges at issue in this appeal, but the evidence the Court of Appeals concluded was inadmissible under *Crawford* and *Davis*, with one exception, may not be admitted. The exception is Officer Lewandowski's testimony about the victim's demeanor during the taped interview.

{40} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, and PETRA JIMENEZ MAES, Justices.

RICHARD C. BOSSON, Justice (concurring in part and dissenting in part).

BOSSON, Justice (concurring in part and dissenting in part).

{41} I am pleased to support most of this Opinion with the sole exception of Section II D, "Forfeiture by Wrongdoing," from which I dissent.

{42} Assuming that Defendant Romero is found guilty of intentional homicide of his deceased wife, in some form, I would hold that all the referenced statements of his wife may be used against him, notwithstanding the Confrontation Clause. Romero has forfeited his right to cross-examine his wife with respect to these statements by virtue of intentionally causing the very absence of his deceased wife of which he now complains. Whether Romero caused that absence with the specific intent to prevent his wife from testifying, or whether he caused that absence simply in a drunken rage, the effect is the same. The witness cannot speak for herself because she is dead at Romero's hands. It seems a perversion of the Constitution and the Confrontation Clause to allow any defendant to profit so from his own misdeeds. Recent decisions from other jurisdictions express a similar reluctance to so narrowly construe the forfeiture doctrine in the wake of *Crawford's* sweeping changes to the Confrontation Clause analysis. *See, e.g., People*

*v. Giles,* 40 Cal.4th 833, 837, 841–43, 55 Cal. Rptr.3d 133, 135, 138–39, 152 P.3d 433, 435, 438–39, (Cal. 2007); *United States v. Martinez,* 476 F.3d 961, 966–67 (D.C.Cir. 2007); *State v. Jensen,* 727 N.W.2d 518, 533–537 (Wis.2007). I am persuaded by the reasons discussed in these cases, as well as those in Justice Minzner's able opinion, and as developed by Judge Pickard in the Court of Appeals below.

{43} I regret that we have lost an opportunity to clarify this Court's recent opinion in *Alvarez–Lopez,* on which the majority appears to rely as a reason for requiring an intent not just to kill the witness, but to silence her as well. In my judgment, *Alvarez–Lopez* is a poor vehicle for this Court's reticence. *Alvarez–Lopez* was not a murder case. The defendant absconded, and by the time he was brought to justice the incriminating witness had been deported. This Court appropriately held, in only a brief discussion, that Alvarez–Lopez had not caused the absence of the witness for purposes of the forfeiture rule. We could have stopped there. Nonetheless we continued, essentially in dicta, to add that according to the federal rule in question Alvarez–Lopez needed to show some specific intent to procure that absence in order to silence the witness, which of course was totally absent in that case. Even the State conceded the point. Rhetorically, the State also conceded in *Alvarez–Lopez* that such a specific intent was an essential element of the forfeiture doctrine, which of course is true if we look only at the federal rule, which is all the parties did in *Alvarez–Lopez* and which of course is NOT the position of the State in the matter before us. As a general proposition, cases do not usually serve as helpful authority for propositions, or in this case choices, neither argued nor discussed. *See Fernandez v. Farmers Ins. Co. of Arizona,* 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) ("[C]ases are not authority for propositions not considered." (internal quotation marks and quoted authority omitted)). I believe that norm should apply in this instance. At the very least, it should serve as a deterrent against undue reliance on that one opinion. I concede that one could go either way on how one interprets the forfeiture doctrine. *Alvarez–Lopez*

should be used to frame the question, not decide it.