This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37791**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**OLIVER TSOSIE, a/k/a**
**OLIVER O. TSOSIE a/ka**
**OLIVER OLIN TSOSIE,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alisa A. Hart, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Kimberly M. Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellee

### MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** This interlocutory appeal stems from the exclusion of certain statements made by an unavailable witness to a Sexual Assault Nurse Examiner (SANE). Following an evidentiary hearing on cross motions filed by the State and Defendant, Oliver Tsosie, the district court found that the statements are hearsay not subject to any exception, and further, that admitting the statements would violate Defendant's rights under the

Confrontation Clause of the Sixth Amendment to the United States Constitution. Because we agree that the admission of the statements would violate Defendant's rights under the Confrontation Clause, we need not address whether the statements are subject to a hearsay exception. We affirm.

**BACKGROUND**

**{2}** Defendant is charged with kidnapping, criminal sexual penetration, aggravated burglary, aggravated battery, and bribery of a witness in connection with events which allegedly occurred on or about December 18, 2017. The alleged victim, Kimbro Talk, died in June 2018 and is unavailable to testify at trial. Before Talk passed away, he made statements during a pretrial interview, alleging that Defendant assaulted and raped him in his home, tied him up, and stole his belongings. Following the alleged assault, Talk managed to free himself and contact police, who transported Talk to the hospital.

**{3}** After Talk was released from the hospital, police escorted him to the Family Advocacy Center for a SANE examination. SANE nurse Gail Starr conducted the examination, which consisted of a physical inspection, forensic evidence collection, and an oral patient-history interview. The subject matter of the interview was wide-ranging, covering Talk's past relationship with Defendant (his former boyfriend), his injuries, and the events which led to Talk's alleged rape and assault. Talk's statements as well as Starr's personal observations were memorialized by Starr in writing on standardized SANE examination forms.

**{4}** After Talk's death in June 2018, the State filed a motion to admit, inter alia, certain statements made by Talk during his examination and interview with Starr. The State admitted that Talk's statements to Starr were hearsay, but argued that they should be admitted under Rule 11-803(4) NMRA, an exception to the hearsay rule permitting into evidence statements made for the purpose of medical diagnosis and treatment. The State contended as well that admitting such statements into evidence would not violate Defendant's Confrontation Clause rights, arguing that statements made for the purpose of medical diagnosis and treatment are non-testimonial. Simultaneously, Defendant filed a motion to exclude these same statements, arguing that the evidence-gathering purpose of the SANE examination rendered any statements elicited from Talk testimonial, and that the statements did not fall within any hearsay exception.

**{5}** The district court held a hearing on October 9, 2018, and partially resolved several other evidentiary issues not subject to this appeal through an order filed on October 16, 2018. However, the district court concluded that it could not rule on the admissibility of Talk's statements without testimony from Starr regarding the intent and purpose of the SANE examination. Accordingly, the district court held a second hearing on October 16, 2018, to allow the State an opportunity to present testimony from Starr. On October 30, 2018, after reviewing the pleadings and hearing additional oral argument, the district court issued an order admitting those statements it deemed to have a primary purpose of medical treatment and excluding the remaining statements.

**{6}**     On November 1, 2018, the State timely filed its notice of appeal, invoking interlocutory appellate jurisdiction, pursuant to NMSA 1978, Section 39-3-3(B)(2) (1972) (allowing the state to file an interlocutory appeal from a district court order suppressing evidence when it "certifies that this appeal is not taken for the purpose of delay, and [that] the evidence . . . is a substantial proof of facts material in the proceeding").

## DISCUSSION

**{7}**     On appeal, we examine whether the district court properly excluded Talk's statements under the Confrontation Clause. At the outset, we note that the district court's ruling on the cross motions to suppress and admit the statements of Talk does not clearly separate its analysis of admissibility under the hearsay rule from its analysis of admissibility under the Confrontation Clause. We reiterate our Supreme Court's guidance regarding the importance of separating these analyses in cases where both rules are implicated by the nature or source of the evidentiary material. *See State v. Mendez*, 2010-NMSC-044, ¶ 26, 148 N.M. 761, 242 P.3d 328 (noting that previous decisions have "conflated the criteria for Confrontation Clause analysis and hearsay under Rule 11-803[(4)]"). As *Mendez* emphasized, "[t]he hearsay rule and the Confrontation Clause are not co-extensive and must remain distinct." *Mendez*, 2010-NMSC-044, ¶ 28. This is because the constitutional concerns implicated by the Confrontation Clause present a "threshold" issue, which is properly addressed separate from the hearsay analysis. *State v. Attaway*, 1994-NMSC-011, ¶ 8, 117 N.M. 141, 870 P.2d 103; *State v. Soliz*, 2009-NMCA-079, ¶ 8, 146 N.M. 616, 213 P.3d 520 (stating "when the declarant is unavailable, out-of-court statements that are testimonial are inadmissible even if they meet an exception to the hearsay rules").

## The Confrontation Clause

**{8}**     We review the district court's determinations regarding the admissibility of statements under the Confrontation Clause de novo. *See State v. Zamarripa*, 2009-NMSC-001, ¶ 22, 145 N.M. 402, 199 P.3d 846. The Sixth Amendment's Confrontation Clause confers upon the accused, "[i]n all criminal prosecutions, . . . the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The United States Supreme Court has interpreted the Confrontation Clause as barring out-of-court statements by witnesses that are "testimonial" unless those witnesses are unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). In *Davis v. Washington*, the United States Supreme Court announced the primary purpose test, holding that statements are "testimonial when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." 547 U.S. 813, 822 (2006); *accord State v. Navarette*, 2013-NMSC-003, ¶ 7, 294 P.3d 435.

**{9}**     In applying the primary purpose test, the district court relied principally on *State v. Romero* for the proposition that "the level of formality of the interrogation is a key factor in determining whether statements are 'testimonial,' " 2007-NMSC-013, ¶ 21, 141

N.M. 403, 156 P.3d 694, and *State v. Largo* for the proposition that "[t]he actions and statements of both the interrogator and the declarant may illuminate the *primary* purpose of the interrogation." 2012-NMSC-015, ¶ 16, 278 P.3d 532. Pursuant to these statements of law, the district court excluded certain statements made by Talk during the SANE examination determining the statements "were not made for the primary purpose of seeking medical treatment and are testimonial hearsay and a violation of Defendant's right to confrontation." For instance, the district court excluded statements of Talk describing the method and manner of strangulation reasoning that "[a]lthough, the SANE nurse has specialized training in injuries caused by strangulation, objectively, the primary purpose of these structured questions are not for medical treatment and focus on past events, not current symptoms." The district court also excluded statements regarding consent for services, information elicited from Talk during the sexual assault intake, and Talk's narrative and statements about the alleged sexual assault.

**{10}**  The State urges us to overturn the district court's ruling, arguing that the district court misapplied the *Romero* holding that "[t]he level of formality of the interrogation is a key factor in determining whether statements are 'testimonial,' " because this quote comes from a portion of the opinion discussing police interrogations, not a SANE examination. Thus, the State contends the district court failed to distinguish the SANE examination in this case from interrogations conducted by law enforcement officers. The State also argues that the facts in this case are distinguishable from the facts of *Romero* and a similar case, *State v. Ortega*, 2008-NMCA-001, 143 N.M. 261, 175 P.3d 929, *overruled on other grounds by Mendez*, 2010-NMSC-044. In *Romero* and *Ortega*, the SANE examinations occurred long after the date of the alleged assault, indicating that their primary purpose was not medical treatment, but evidence gathering. *See Romero*, 2007-NMSC-013, ¶ 17; *Ortega*, 2008-NMCA-001, ¶¶ 12, 19. In contrast, Talk's SANE examination occurred the same night as the alleged assault, and hence, the State contends that Talk's statements are more likely to have a primary purpose of medical treatment rather than prosecution of a crime. Finally, the State argues that the district court's decision is incongruous with recent decisions from other jurisdictions wherein courts admitted statements to medical personnel made under similar circumstances.

**{11}**  In contrast, Defendant urges us to follow *Romero* and *Ortega*, which stand for the proposition that even statements with a medical purpose can be testimonial if they accuse a defendant of specific criminal acts. Defendant further contends that the Confrontation Clause's primary purpose test means what it says; it requires a primary purpose of medical treatment—not just pertinence thereto—in order to be admissible, and urges us to affirm the district court findings applying this framework.

**{12}**  The parties' disagreement regarding application of the law to the facts of this case is fueled by a complicated history of Confrontation Clause jurisprudence. Previous courts have widely varied their approach and focus based on the nature and facts of the case. *Compare Romero*, 2007-NMSC-013, ¶ 12 (focusing primarily on the intent of the declarant and the content of the declarant's statements), *with State v. Tafoya*, 2010-NMCA-010, ¶ 35, 147 N.M. 602, 227 P.3d 92 (focusing primarily on the circumstances

and purpose of the SANE examination at issue, and the role of the nurse who conducted it), *and State v. Carmona*, 2016-NMCA-050, ¶ 38, 371 P.3d 1056 (examining both individual statements and their surrounding circumstances as well as the knowledge of the witness and SANE nurse to determine admissibility).

**{13}** Our Supreme Court's 2013 *Navarette* decision aids in clarifying the proper framework of analysis by identifying seven principles "essential" to an analysis under the Confrontation Clause: (1) "an out-of-court statement that is both testimonial and offered to prove the truth of the matter asserted may not be admitted unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant"; (2) "a statement can only be testimonial if the declarant made the statement primarily intending to establish some fact with the understanding that the statement may be used in a criminal prosecution"; (3) "when determining whether an out-of-court statement is testimonial, there is no meaningful distinction between factual observations and conclusions requiring skill and judgment"; (4) "even if a statement . . . does not target a specific individual, the statement may still be testimonial"; (5) "the fact that an out-of-court statement . . . is not inherently inculpatory does not make it non-testimonial"; (6) "the Confrontation Clause is violated only if the testimonial statement is offered to prove the truth of the matters asserted"; and (7) "an out-of-court statement that is disclosed to the fact-finder as the basis for an expert's opinion is offered for the truth of the matter asserted." *Navarette*, 2013-NMSC-003, ¶¶ 7-13. Our inquiry is further aided by the United States Supreme Court's decision in *Ohio v. Clark*, wherein the Court examined a question it "repeatedly reserved: whether statements to persons other than law enforcement officers are subject to the Confrontation Clause." 576 U.S. 237, 246 (2015). Reviewing a case in which a student made statements to his teacher, the Court clarified that although statements to individuals other than law enforcement officers are not "categorically outside the Sixth Amendment," statements to individuals "not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." *Id.* at 249. From *Clark* then, we can derive an additional principle guiding our Confrontation Clause analysis. More generally, our Supreme Court has noted that a Confrontation Clause analysis should focus "largely on surrounding circumstances to separate testimonial from non-testimonial statements." *Mendez*, 2010-NMSC-044, ¶ 29. "Both this Court and the United States Supreme Court have held that in lieu of suppressing in entirety a document containing such testimonial statements, the district court instead should review the evidence at issue in a line-by-line manner and redact those portions that are testimonial in nature." *State v. Jim*, 2014-NMCA-089, ¶ 17, 332 P.3d 870.

**{14}** From these principles, we conclude that we should conduct our analysis of Confrontation Clause issues under a totality of the circumstances approach: interpreting the testimonial nature of each statement individually, guided by the circumstances in which it was made, and evaluating both the intent of the declarant and the interviewer.

**{15}** Applying the principles articulated above to the statements at issue in this case, we hold that there was no error in the district court's ruling. We begin with analyzing the

identity of the interviewer—Starr's identity as a SANE—as it has particular relevance in this case. The State argues that Starr did not "interrogate" Talk in the same way a police officer might; ergo the primary purpose of her examination could not have been "to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822. We disagree. The fact that Starr is a SANE as opposed to a law enforcement agent does not necessarily render statements made to her non-testimonial. While Starr is "not principally charged with uncovering and prosecuting criminal behavior," Clark, 576 U.S. at 249, Starr testified that she was "trained in treating victims of sexual assault, as well as in collecting and preserving evidence of sexual abuse for forensic use." In addition, we have previously noted that "SANE nurses have a dual role: the provision of medical care and the collection and preservation of evidence." *Mendez*, 2010-NMSC-044, ¶ 42 (emphasis omitted).

**{16}**     Second, because a statement can only be testimonial if the declarant made the statement with the understanding that the statement may be used in a criminal prosecution, we review the evidence adduced below to ascertain Talk's level of understanding of the purpose of his statements to Starr. The examination of Talk took place at a clinic located in the same building as law enforcement, but in a separate area. Talk was also brought to the clinic by law enforcement. At Starr's request, Talk provided a narrative recounting the assault and identifying his assailant. Finally, Talk was asked to provide genital and anal swabs for forensic purposes and consented to "release all records and evidence pertaining to this case to the pertinent law enforcement agency." Because Talk was taken to the clinic by law enforcement on the same night as the assault, was asked in detail about the assault during the examination, was asked to provide forensic genital and anal swabs, and consented to the release of information to law enforcement, we conclude that Talk understood that at least some of his statements would be used to prosecute Defendant. To the extent statements made by Talk were testimonial they are properly excluded, and cannot serve as the basis for Starr's opinion at trial.

**{17}**     Aggregating the factors applicable to this case and applying them to each individual statement, we affirm the district court's ruling under the Confrontation Clause. Specifically, Talk's narrative account of the encounter is testimonial in that it identifies Defendant and accuses him of specific acts. Talk's description of the method and manner of strangulation are testimonial for the same reasons. And, the remaining statements the district court excluded are testimonial because they focus on past events rather than current symptoms.

**{18}**     Having determined that the district court properly excluded the statements because admission of the statements would violate Defendant's Confrontation Clause rights, we need not address whether these same statements are admissible under an exception to the hearsay rule. *See State v. Martinez*, 1982-NMCA-137, ¶ 16, 99 N.M. 48, 653 P.2d 879 (holding that "[t]he fact that evidence may have qualified for admission

under an exception to the hearsay rule does not necessarily mean that a defendant's constitutional right of confrontation was not violated.").[1]

## CONCLUSION

**{19}** For the foregoing reasons, we affirm.

**{20}  IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**

---

[1]The State also argues that the district court disregarded the uncontradicted testimony of Starr. The State relies on *State v. Jason L.*, 2000-NMSC-018, ¶ 11, 129 N.M. 119, 2 P.3d 856, for the proposition that when a district court makes no findings of fact in a decision on a motion to suppress, we presume from the district court's failure to indicate its rejection of uncontradicted evidence that the district court "believed all  uncontradicted evidence." We are unpersuaded. Our role is not to second guess the district court's decisions regarding the weight and reliability of evidence. *See State v. Martinez*, 2018-NMSC-007, ¶ 14, 410 P.3d 186 ("[T]he district court must evaluate the credibility of witnesses and determine the weight to which the evidence is entitled."). Acting in its capacity as fact-finder, "[t]he district court may exercise discretion to credit [or discredit] portions of a witness'[s] testimony[.]" *Id.* (internal quotation marks and citation omitted). This discretion applies to expert testimony. *See State v. Gonzales*, 2001-NMCA-025, ¶ 40, 130 N.M. 341, 24 P.3d 776 ("We recognize that the fact[-]finder is entitled to disregard evidence presented by either party, and to disregard the testimony of experts[.]" (citation omitted)), *overruled on other grounds by State v. Rudy B.*, 2009-NMCA-104, 147 N.M. 45, 216 P.3d 810. In cases such as this where a district court does not explicitly make any findings regarding the credibility of a witness, "[a]ll reasonable inferences in support of the district court's decision will be indulged in, and all inferences or evidence to the contrary will be disregarded." *Jason L.*, 2000-NMSC-018, ¶ 10 (internal quotation marks and citation omitted).