This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38542**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DANIETTA GRIFFIN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**James W. Counts, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Victor E. Sanchez, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant Danietta Griffin was convicted of aggravated burglary, contrary to NMSA 1978, Section 30-16-4(A) (1963), aggravated assault with a deadly weapon, contrary to NMSA 1978, Section 30-3-2(A) (1963), and criminal damage to property, contrary to NMSA 1978, Section 30-15-1 (1963). Defendant appeals her convictions, asserting that the district court's admission of certain statements violated her Sixth Amendment Confrontation Clause rights and Article II, Section 14 of the New Mexico Constitution. Because we agree that Defendant's Confrontation Clause rights were

violated, we need not address Defendant's remaining argument on appeal. We reverse Defendant's convictions and remand for a new trial.

## BACKGROUND

**{2}** This case involves an altercation between Defendant, James Kellogg, (Defendant's ex-boyfriend), and Crystal Salas, at whose home the altercation transpired. At issue in this case is the admissibility of certain statements made by Kellogg, who died prior to trial, but whose statements were captured by lapel camera and presented to the jury at trial. Kellogg's statements are best understood in the context of the contrasting accounts of the events which were testified to by Defendant and Salas at trial.

**{3}** Salas testified to the following: Salas and Kellogg were talking in the living room of Salas's home when they were interrupted by Defendant, who was yelling that she wanted Kellogg to give her the keys to her truck. Kellogg opened the front door and handed Defendant her keys, but Defendant pushed the door open to argue with Kellogg. As the two continued to argue, Salas yelled at Defendant to get out of her home. Defendant left the home, but moments later, Defendant kicked the front door from the outside, breaking the frame so that the door was hanging from its hinges, and walked into the home carrying a rifle. Defendant pointed the rifle at Kellogg and then at Salas. Following a physical struggle, Kellogg was able to take the rifle away from Defendant. Defendant left the home, but shortly thereafter, attempted to reenter through the front door. Salas and Kellogg pushed the door to prevent Defendant from reentering, but Defendant put her leg into the door opening to stop it from closing. Salas and Kellogg continued to push on the door, trapping Defendant's leg in the opening. Defendant screamed, Kellogg and Salas released the door, Defendant moved her leg, and the door came off its hinges. Defendant walked to her vehicle and began throwing Kellogg's belongings out of her truck. Salas called 911 and armed herself with a taser from the kitchen table before returning outside with Kellogg. Defendant left, and law enforcement arrived four or five minutes later.

**{4}** Defendant gave an alternative account of the events. Defendant agreed that she went to Salas's home to retrieve her pickup truck and keys from Kellogg, but denied ever entering the home with the rifle or pointing it at anyone, and further claimed that Salas broke the door by slamming the door into Defendant's knee. Defendant testified that when she arrived, she calmly knocked on Salas's side door and asked for her keys. Salas opened the door "screaming" and was holding a taser. Kellogg approached the door to hand Defendant the keys to the truck, but Defendant felt "another force," Salas pushing on the door to close it. Defendant stepped forward into the doorway to take the keys from Kellogg, and her knee became pinned in the door. Defendant retrieved her keys and moved her leg from the door, at which point she walked back toward her truck. Defendant began removing Kellogg's belongings, including a rifle, from her truck. After Defendant handed the rifle to Kellogg he went in the home with Salas. Ten seconds later, Kellogg and Salas came back outside. Kellogg told Defendant to leave, and that

the police were coming. Kellogg returned indoors, leaving Salas and Defendant outside, and following continued threats and yelling from Salas, Defendant left.

**{5}** Kellogg died before trial, but his statements to officers who arrived on the scene were captured by Officer Brendan Rodela's lapel camera. Defendant filed a motion in limine requesting "[e]xclusion of any statements of . . . Kellogg," alleging that admission of the statements would violate her Confrontation Clause rights under the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution. The district court denied the motion and Defendant was convicted.

## DISCUSSION

**{6}** Defendant argues that the district court's admission of Kellogg's statements violated her Sixth Amendment Confrontation Clause rights and Article II, Section 14 of the New Mexico Constitution. The Confrontation Clause confers upon the accused, "[i]n all criminal prosecutions, . . . the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also* N.M. Const. art. II, § 14. The Confrontation Clause bars out-of-court statements by witnesses that are "testimonial" unless those witnesses are unavailable, and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59, (2004). Statements "are *testimonial* when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to a later criminal prosecution." *State v. Largo*, 2012-NMSC-015, ¶ 9, 278 P.3d 532 (emphasis added) (alteration, internal quotation marks, and citation omitted). "Statements are *nontestimonial* when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency." *Id.* (emphasis added) (alteration, internal quotation marks, and citation omitted). We focus "on surrounding circumstances to separate testimonial from non[]testimonial statements[,]" *State v. Mendez*, 2010-NMSC-044, ¶ 29, 148 N.M. 761, 242 P.3d 328, noting that "the level of formality of the interrogation is a key factor in determining whether statements are 'testimonial[,]' " *State v. Romero*, 2007-NMSC-013, ¶ 21, 141 N.M. 403, 156 P.3d 694, and that "[t]he actions and statements of both the interrogator and the declarant may illuminate the *primary* purpose of the interrogation." *Largo*, 2012-NMSC-015, ¶ 16. We review the district court's determinations regarding the admissibility of statements under the Confrontation Clause de novo. *State v. Zamarripa*, 2009-NMSC-001, ¶ 22, 145 N.M. 402, 199 P.3d 846.

**{7}** Defendant challenges the admission of three statements she contends violated her constitutional right to confront and cross-examine Kellogg: (1) "I had to jerk [the rifle] out of [Defendant's] hands," (2) "I was having to wrestle [the rifle] out of her arms," and (3) "I was able to get her kind of out the door without much and then she stuck her foot in the door and that's what broke the door. So she kept pushing and pushing and pushing." Defendant asserts that police were conducting a criminal investigation to prove past events, that Kellogg understood his statements might be used to prosecute Defendant, and accordingly, that admission of these statements violated Defendant's

Confrontation Clause rights. In contrast, the State contends that Kellogg's statements were admissible because they were taken under informal conditions and because the circumstances on scene objectively indicate an intent to assist police in addressing and assessing an ongoing emergency. We hold that the district court erred in admitting the statements.

{8}     We agree with the State that the informal setting surrounding Kellogg's statements, (i.e., they were made at the scene rather than during a separate interview at a police station), weigh in favor of finding that the statements are nontestimonial. However, the formality of the interrogation is not dispositive of the ultimate inquiry which is whether the "primary purpose of interrogation [was] to enable police assistance to meet an ongoing emergency" or "to establish or prove past events potentially relevant to a later criminal prosecution." *Largo*, 2012-NMSC-015, ¶ 9 (alteration, internal quotation marks, and citation omitted). It does not appear to us that the officers were facing an ongoing emergency, nor does it appear that the *primary* purpose of the statements was to "secure the scene or give immediate aid to victims [or that] the declarant's primary goal was to get aid[.]" *State v. Romero*, 2006-NMCA-045, ¶ 66, 139 N.M. 386, 133 P.3d 842. The United States Supreme Court discussion in *Davis v. Washington*, *Hammon v. Indiana*, (hereinafter, *Davis*) 547 U.S. 813 (2006) is instructive. *Davis* consolidated two separate appeals: *See Davis*, 547 U.S. at 817-21. In the *Hammon case*, the victim was allegedly attacked by her husband at their home. *Id.* at 819-20. When the officers arrived on scene shortly after the incident, the victim and her husband were separated, were not engaged in physical violence, and the officers did not render immediate aid to either the victim or the husband. *Id.* The victim described the violent acts that her husband allegedly committed to one of the police officers. *Id.* at 819-20. The victim did not participate in the criminal trial that ensued, but the district court permitted the officer who spoke to the victim to recount what she told him during the husband's trial. *Id.* at 820. The United States Supreme Court held that the victim's statements were testimonial because "[i]t [was] entirely clear from the circumstances that the interrogation was part of an investigation into possibly criminal past conduct . . . . [t]here was no emergency in progress; the interrogating officer testified that he had heard no arguments or crashing and saw no one throw or break anything[.]" *Id.* at 829. "When the officer . . . elicited the challenged statements, he was not seeking to determine . . . 'what is happening,' but rather 'what happened.' " *Id.* at 830. The Court concluded that "[o]bjectively viewed, the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime[.]" *Id.*

{9}     Similarly, here, we are not persuaded that the primary purpose of Officer Rodela's interrogation of Kellogg was to address an ongoing emergency. Shortly after arriving on scene, Officer Rodela "discovered the person with the firearm was no longer on scene" and told law enforcement via radio to "downgrade," signaling his belief that an ongoing emergency was not in progress. The officers then calmly investigated the alleged crime; assessed the damage to the front door, reviewed the cell phone footage captured by Salas and learned that Kellogg had retrieved the rifle. At no point did any officers render aid to Salas or Kellogg, nor did it appear that the officers were actively searching for Defendant in the immediate area. All of the statements Defendant objects

to on appeal were elicited nearly fifteen minutes after officers arrived on scene, and only after officers had photographed the door, reviewed cell phone footage, and learned that the rifle was secure. The statements were solicited only after an officer inquired whether Salas wanted to "file charges" and after Kellogg noted in response, his belief that the "State's gonna get her anyway." There was no ongoing emergency at the time Kellogg made the statements at issue. Rather, the officers questioned Kellogg "to establish or prove past events potentially relevant to a later criminal prosecution." *Largo*, 2012-NMSC-015, ¶ 9 (alteration, internal quotation marks, and citation omitted). Officer Rodela, for his part, testified that, like the officer in *Hammon*, he was questioning Kellogg to determine not what was happening, but rather "what happened." *See Davis*, 547 U.S. at 829-30 (discussing the *Hammon* case). Officer Rodela photographed the rifle and told Kellogg they needed to take the rifle "as evidence" of a possible crime. Objectively viewed, the primary purpose of soliciting statements from Kellogg was to investigate a possible past crime. For the foregoing reasons, we conclude Kellogg's statements were testimonial, and that their admission violated Defendant's rights under the Confrontation Clause.

**{10}** The State argues that even if the admission of Kellogg's statements violated the Confrontation Clause, admission of the statements was harmless. We disagree. Where, as here, a constitutional error has been established, "[t]he [s]tate has the burden on appeal to establish beyond a reasonable doubt that the jury verdict was not tainted by the constitutional error." *State v. Flores*, 2018-NMCA-075, ¶ 13, 430 P.3d 534 (alteration, internal quotation marks, and citation omitted). We will "only conclude that a constitutional error is harmless when there is no reasonable *possibility* it affected the verdict." *State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110, 121 (alteration, internal quotation marks, and citation omitted). "[W]hen reviewing an error's role in the trial, courts may, depending upon the circumstances of the cases before them, examine 'the importance of the erroneously admitted evidence in the prosecution's case', as well as 'whether the error was cumulative' or instead introduced new facts." *Id.* ¶ 43 (alterations, internal quotation marks, and citation omitted).

**{11}** The State argues that Kellogg's testimony is cumulative because Defendant admitted Kellogg took the rifle from her, and also testified that her foot became trapped in the door. The State's attempt to equate Kellogg's version of events with Defendant's retelling overlooks the stark contrast in *how* each witness described these events. Defendant testified she *handed* the rifle to Kellogg, while Kellogg told police he had to *wrestle* it from her. Defendant also said the door broke because Salas and Kellogg trapped her knee in the door by pushing on the door, while Kellogg told police that the door broke because *Defendant* was pushing the door.

**{12}** We do agree that Kellogg's statements were largely cumulative of Salas's testimony, but "whether evidence is cumulative is merely one factor" we consider in determining whether evidence, which should have been excluded should be deemed harmless. *State v. Johnson*, 2004-NMSC-029, ¶ 37, 136 N.M. 348, 98 P.3d 998. We previously clarified "that when determining whether certain erroneously admitted evidence is 'cumulative,' the reviewing court must carefully assess the degree to which

that evidence corroborated other similar evidence of the defendant's guilt" and "[t]o the extent the evidence corroborates, and therefore strengthens, the prosecution's evidence, it cannot be deemed 'cumulative.' " *Id.* In this case, we are not persuaded that there was no reasonable possibility that admission of Kellogg's testimony affected the verdict. The jury was presented with two different versions of events: Salas's version (backed by Kellogg's testimony), and Defendant's version. The jury may well have been swayed to convict Defendant because Kellogg's statements reinforced the version of events described by Salas. Given that "[t]he [s]tate has the burden on appeal to establish beyond a reasonable doubt that the jury verdict was not tainted by the constitutional error," *Flores*, 2018-NMCA-075, ¶ 13 (alteration, internal quotation marks, and citation omitted), and given that we will "only conclude that a constitutional error is harmless when there is no reasonable *possibility* it affected the verdict," *Tollardo*, 2012-NMSC-008, ¶ 36 (alteration, internal quotation marks, and citation omitted), we decline to hold that the error was harmless. *See Romero*, 2007-NMSC-013, ¶ 27 (declining to find harmless error where the district court allowed the jury to hear evidence which violated the Confrontation Clause despite the existence of "sufficient evidence to support the conviction without the inadmissible evidence").

**CONCLUSION**

**{13}**   For the foregoing reasons, we reverse Defendant's convictions and remand to the district court for a new trial in accordance with this opinion.

**{14}   IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**SHAMMARA H. HENDERSON, Judge**